

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-052-CR

THE STATE OF TEXAS                                                                    STATE

V.

DAVID WAYNE WOODARD                                                          APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

## OPINION

------------

### I. Introduction

Appellee David Wayne Woodard was charged with the misdemeanor offense of driving while intoxicated. The State appeals the trial court's order granting Appellee's motion to suppress evidence. In one issue, the State argues the trial court erred by not recognizing the community caretaking function of a police officer in responding to a reported automobile accident and

by failing to recognize a police officer may pose questions to a fellow citizen without justification. We reverse and remand.

## II. Background

Shortly after 10 p.m. on May 17, 2008, Burkburnett police officers John Warner, Jr. and Donald Morgan responded to a dispatch call regarding a car in a ditch at the Y-shaped convergence of Berry Street and the Oklahoma Cut-Off. An anonymous phone call prompted the dispatch, but the caller provided no additional details regarding the accident, the vehicle, the location, or the car's passengers.

Officer Warner received a second dispatch call as he drove to the accident scene. The dispatch reported the anonymous caller's observation of the vehicle's driver, wearing a dark T-shirt and jeans and walking approximately six blocks north of the accident scene. The second dispatch provided no other details regarding the driver's attire, physical features, or direction.

More than a quarter mile from the wrecked car, and more than six blocks west of the last reported location of the driver, Officer Warner saw Appellee wearing a dark T-shirt and jeans walking on the public sidewalk. Officer Warner did not initially observe Appellee breaching the peace, walking illegally, or behaving in a manner that endangered himself or others. Officer Warner testified he did not believe Appellee was publicly intoxicated when he first saw

2

him, nor did he have reason to make a "community caretaking stop" of Appellee. Officer Warner stated that he just stopped to ask Appellee a few questions and admitted he had a "hunch" that Appellee was the driver of the wrecked vehicle because his attire matched the vague description provided by the anonymous caller.

Immediately upon encountering Appellee, Officer Warner inquired whether Appellee was involved in a collision at Oklahoma Cut-Off and North Berry. Appelleet admitted that he had been driving the wrecked vehicle. Officer Warner described Appellee's response of "Yes" as "freely volunteered." During the encounter, Appellee stated he was drunk and should not have been driving. Officer Warner said that based on his knowledge, training, and experience, Appellee appeared to be intoxicated.

About the time Officer Warner encountered Appellee, Officer Morgan found a vehicle nosedown in a drainage ditch near the location provided in the dispatch. Officer Morgan looked in the car's windows and saw no passengers. Upon noticing damage to the front of the vehicle, and believing the accident may have caused injuries, Officer Morgan followed the police department's standard procedure for identifying the driver of a wrecked, unoccupied vehicle by opening the driver's door to locate a driver's license, insurance card, or other form of identification. Officer Morgan's intent was not to investigate for

3

criminal activity, but to determine the identity of the car's owner so the driver might be located and treated for any possible injuries. During the vehicle search, Officer Morgan found an insurance card and two beer cans — one empty and one that was cold and three-quarters empty. Officer Morgan informed Officer Warner of his findings and remained with the vehicle until it was towed. Officer Morgan admitted he did not know when the beer was consumed, who drove the vehicle, the number of passengers in the vehicle, or when the accident occurred.

After receiving Officer Morgan's report and observing Appellee, Officer Warner asked Appellee to perform standardized field sobriety testing and, based on Appellee's performance, determined Appellee was intoxicated. Appellee consented to take a breath test, and Officer Warner placed Appellee in custody. Officer Warner testified that, based on the totality of the circumstances, he believed Appellee drove the vehicle Officer Morgan found in the ditch. Officer Warner admitted he did not possess personal knowledge that Appellee drove the car, drove while intoxicated, or consumed the beers before the wreck.

The State indicted Appellee for the misdemeanor offense of driving while intoxicated. Appellee filed a motion to suppress evidence, claiming a lack of probable cause, consent, and that "the scope of the seizure and search exceeded that authorized by law." Following an evidentiary hearing, at which

4

only Officers Warner and Morgan testified, the trial court granted Appellee's motion and entered findings of fact and conclusions of law.[1]

### III. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn

---

[1] The trial court adopted all findings of fact and conclusions of law proposed by Appellee and added one additional conclusion of law for a total of sixty-one findings of fact and forty-nine conclusions of law.

5

on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the motion to suppress hearing is the arresting officer, the only question before us is whether the trial court properly applied the law to the facts it found. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 86–87, 89. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007);

6

*Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### IV. Suppression of Evidence Arguments

On appeal, the State argues the trial court erred by granting the motion to suppress because it failed to recognize (1) a police officer's community caretaking function of responding to a reported automobile accident and (2) that a police officer is just as free as any other citizen to stop and ask questions of a fellow citizen without the need for any justification. Appellee contends the trial court's decision to suppress evidence is correct because the investigative detention of Appellee was based on Officer Warner's hunch after he received a dispatch relaying information provided by an anonymous tipster.

### A. Community Caretaker Exception Inapplicable

The community caretaking exception allows police officers, as part of their duty to "serve and protect," to stop or temporarily detain an individual whom a reasonable person would believe is in need of help, given the totality of circumstances. *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999); *see Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973). The community caretaking exception is to be narrowly applied. *Wright*, 7 S.W.3d at 152. To invoke the exception, an officer's primary motive must be concern for the individual's well-being. *Corbin v. State*, 85 S.W.3d

272, 277 (Tex. Crim. App. 2002). Determining whether an officer has properly invoked his community caretaking function is a two-step process. *Id.* First, the reviewing court must determine whether the officer was primarily motivated by a community caretaking purpose. *Id.* Second, the court must determine whether the officer's belief that his assistance was required was reasonable. *Id.*

Here, the record reflects that at the time he approached Appellee, Officer Warner (1) was unsure if a wreck existed at the alleged location, (2) possessed no personal knowledge that Appellee had operated the vehicle, (3) admitted the driver's description was extremely vague, and (4) was not concerned for Appellee's safety. Moreover, the record reflects Officer Warner did not initially observe that Appellee was endangering himself or others.

We conclude that the trial court, as the finder of fact and exclusive judge of credibility, could have found that Officer Warner was not primarily motivated by community caretaking concerns when he made the decision to pose a question to Appellee. *See id.* (citing *Ross*, 32 S.W.3d at 855). Thus, we disagree with the State that the community caretaking function permitted Officer Warner to temporarily detain Appellee.

**B. Consensual Encounter or Investigative Detention?**

The State also contends the trial court erred by granting Appellee's motion to suppress evidence because Officer Warner's interaction with Appellee was a consensual encounter that permitted Officer Warner to ask Appellee questions without having reasonable suspicion Appellee committed a crime. We defer to the trial court's conclusion, based on its apparent disbelief of at least part of Officer Warner's testimony, that the officer did not have reasonable suspicion to stop Appellee. We conclude, however, that Officer Warner was justified in approaching Appellee because the police-citizen interaction was initially a consensual encounter.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV. A temporary detention for purposes of investigation constitutes a seizure for Fourth Amendment purposes. *See Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968). However, not every encounter between a civilian and a police officer implicates the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997); *Horton v. State*, 16 S.W.3d 848, 851 (Tex. App.—Austin 2000, no pet.).

Three categories of interactions between police officers and citizens are recognized by the Texas Court of Criminal Appeals: arrests, investigative detentions, and encounters. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Unlike investigative detentions and arrests, which are seizures for Fourth Amendment purposes, an encounter is a consensual interaction, which the citizen may terminate at any time. *See Gurrola v. State*, 877 S.W.2d 300, 302–03 (Tex. Crim. App. 1994); *State v. Bryant*, 161 S.W.3d 758, 761 (Tex. App.—Fort Worth 2005, no pet.). So long as the person remains free to disregard the officer's questions and go about his business, the encounter is consensual and merits no further constitutional analysis. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (citing *California v. Hodari D.*, 499 U.S. 621, 628, 111 S. Ct. 1547, 1552 (1991)).

Law enforcement officers are permitted to approach individuals without probable cause or reasonable suspicion to ask questions or even to request a search. *See Florida v. Royer*, 460 U.S. 491, 497–98, 103 S. Ct. 1319, 1324 (1983); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999); *Hunter*, 955 S.W.2d at 104; *Johnson*, 912 S.W.2d at 235; *Horton*, 16 S.W.3d at 851. Such an encounter does not require any justification on the officer's part. *See United States v. Mendenhall*, 446 U.S. 544, 553, 100 S. Ct. 1870, 1877 (1980); *Daniels v. State*, 718 S.W.2d 702, 704 (Tex. Crim. App. 1986),

10

*cert. denied*, 479 U.S. 885 (1986), *overruled on other grounds*, *Juarez v. State*, 758 S.W.2d 772, 780 (Tex. Crim. App. 1988). Police officers are as free as any other citizen to approach citizens on the street and ask for information. *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). Such interactions may involve inconvenience or embarrassment, but they do not involve official coercion. *Id.* Only when the implication arises that an officer's authority cannot be ignored, avoided, or ended, does a Fourth Amendment seizure occur. *Id.*

Determining whether specific facts amount to a detention under the Fourth Amendment or a consensual police-citizen encounter "is subject to de novo review because that is an issue of law — the application of legal principles to a specific set of facts."[2] *Id.* at 241. The occurrence of a consensual encounter is determined by the totality of the circumstances and "whether a reasonable person would feel free to decline the officer's requests or otherwise terminate the encounter." *St. George v. State,* 197 S.W.3d 806, 819 (Tex.

---

[2] Thus, any of the trial court's findings of fact stating that an investigatory detention occurred are actually conclusions of law reviewable by this court considering the totality of circumstances and viewing the evidence in the light most favorable to the trial court's ruling. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818; *Gray*, 158 S.W.3d at 469; *see also Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App. — Fort Worth 1995, writ ref'd).

App.—Fort Worth 2006), *aff'd*, 237 S.W.3d 720 (Tex. Crim. App. 2007) (quoting *Bostick*, 501 U.S. at 436, 111 S. Ct. at 2387); *State v. Murphy*, No. 2-06-00267-CV, 2007 WL 2405120, at *2 (Tex. App.—Fort Worth Aug. 23, 2007, no pet.) (mem. op., not designated for publication).

Circumstances that may indicate a police-citizen interaction is a seizure, rather than a consensual encounter, include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, or flashing lights or blocking a suspect's vehicle. *Mendenhall*, 446 U.S. at 554, 100 S. Ct. at 1877; *Juarez v. State*, Nos. 14-05-00196-CR, 14-05-00197-CR, 14-05-00198-CR, 2006 WL 300409, at *2 (Tex. App.—Houston [14th Dist.] Feb. 9, 2006, no pet.) (not designated for publication); *see State v. Carter*, No. 02-04-00063-CR, 2005 WL 2699219, at *2 (Tex. App.—Fort Worth Oct. 20, 2005, pet. ref'd) (mem. op., not designated for publication). Absent this type of evidence, however, otherwise inoffensive conduct between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that person. *Mendenhall*, 446 U.S. at 555, 100 S. Ct. at 1877; *Murphy*, 2007 WL 2405120, at *2.

12

**C. A Consensual Encounter Occurred**

In *Murphy*, a similar case, we reversed a trial court's granting of a motion to suppress evidence and held the police officer's initial approach in that case was a consensual encounter that escalated into an investigative detention supported by reasonable suspicion. 2007 WL 2405120, at *2. In that case, the police officer approached Murphy as he tried to push his motorcycle up an embankment in a city park, asked "what had happened," and "informed him that it was unlawful for him to operate the motorcycle within the park." *Id.* at *1. Murphy admitted that "the motorcycle belonged to him, . . . that he was the one [who] was riding it," and that he was dizzy. *Id.* As the officer helped push the motorcycle up the embankment, the officer suspected that Murphy was intoxicated after noticing that he had bloodshot, watery eyes, was disoriented, had slurred speech, and had the smell of alcohol on his breath. *Id.* The officer then administered field sobriety tests and arrested Murphy for driving while intoxicated. *Id.* We concluded, based on the totality of circumstances, that the officer was justified in approaching Murphy and that the initial interaction was a consensual encounter because the officer had merely engaged Murphy in a conversation, informed him of a law of which he might be unaware, and helped him with his motorcycle. *Id.* at *3. There was no evidence that the officer displayed his weapon, physically threatened

13

Murphy, used harsh language or touch, activated flashing lights, or prevented Murphy from leaving, and no evidence existed that Murphy did not feel free to leave. *Id.* We further concluded that the facts learned in the initial consensual encounter provided ample specific, articulable facts that led the officer reasonably to conclude that Murphy had been engaged in criminal activity. *Id.*

Like in *Murphy*, the evidence in this case shows that, initially, Officer Warner merely engaged Appellee in conversation. Officer Warner was justified in approaching Appellee on a public sidewalk and asking him a few questions; he needed no articulable suspicion to engage Appellee in this manner. *See, e.g., Ashton v. State*, 931 S.W.2d 5, 7 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding no investigatory detention occurred, and therefore no reasonable suspicion needed, when officer approached appellant sitting in a parked car in a public place and asked her to roll down her window); *Roe v. State*, 738 S.W.2d 378, 381 (Tex. App.—Corpus Christi 1987, pet. ref'd) (holding officer's actions in approaching suspect's parked van, asking for and examining his driver's license, and speaking to him did not rise to the level of detention); *Thomas v. State*, 633 S.W.2d 334, 335 (Tex. App.—Dallas 1982, pet. ref'd) (holding investigatory detention began after police smelled marijuana, not when police officers initially stopped their car in front of car in which defendant was sitting).

14

Appellee argues that Officer Warner needed reasonable suspicion to approach and question him and that a "hunch" that Appellee was the driver of the wrecked vehicle was not sufficient to form a reasonable suspicion. The fact that Officer Warner had a "hunch" Appellee was the driver of the wrecked vehicle does not preclude the interaction from being a permissible consensual encounter. *See Hunter*, 955 S.W.2d at 104 (holding a reasonable, innocent person would feel free to leave when two plain clothes officers approached and questioned suspect about travel plans and whether he was carrying drugs, told suspect they were conducting a "narcotics interview," and requested to search suspect's bag); *Murphy*, 2007 WL 2405120, at *2; *State v. Salinas*, No. 12-02-00275-CR, 2004 WL 306128, at *3 (Tex. App.—Tyler Feb. 18, 2004, no pet.) (mem. op., not designated for publication) (noting officer's questions about suspects' involvement in destruction of property would not communicate to the individuals that they were not free to leave).

Here, the trial court erroneously applied the law to the facts and concluded that "[t]he interaction between Officer John Warner and David Woodard was not a consensual encounter because a reasonable person in Mr. Woodard's situation would not have believed that he was free to leave when Officer Warner decided to stop him." There is no evidence in the record of Appellee's subjective perception that he did not feel free to leave. *See Garcia-*

15

*Cantu*, 253 S.W.3d at 249 n.48. The record is devoid of a threatening presence of numerous officers around Appellee, Officer Warner's display of any weapon, any physical touching of Appellee by Officer Warner, Officer Warner's words or tone of voice indicating that compliance with his requests might be compelled, or flashing lights or blocking Appellee's path. No evidence indicates that Officer Warner's mere approach interfered with Appellee's freedom of movement or caused inconvenience and loss of time, nor that the officer's initial questioning constituted an unconstitutional seizure. *See Stewart v. State*, 603 S.W.2d 861, 862 (Tex. Crim. App. 1980) (holding a consensual encounter initially occurred when officers approached a parked van and shined their spotlights into the van, but it became a reasonable and valid investigatory detention when the driver exited the vehicle and the officers smelled marijuana). Nor do the facts indicate Officer Warner manifested an intent to formally detain Appellee until questions gave rise to further, articulable facts that, in light of Officer Warner's experience and training as a police officer, would create a reasonable suspicion that Appellee had been driving while intoxicated. *See Garcia-Cantu*, 253 S.W.3d at 244 n.41; *see, e.g.*, *Roe*, 738 S.W.2d at 381; *Thomas*, 633 S.W.2d at 335.

Similar to the facts in *Murphy*, the encounter between Appellee and Officer Warner escalated into an investigative detention only after Officer

16

Warner had reasonable suspicion that Appellee had been driving while intoxicated. *Murphy*, 2007 WL 2405120, at *2; *see, e.g., Roe*, 738 S.W.2d at 381; *Thomas*, 633 S.W.2d at 335. Officer Warner testified that, after approaching Appellee, he observed Appellee's bloodshot and glazed eyes, unsteadiness, staggering walk, and odor of alcohol on his breath and body. These observations, Appellee's admission that he drove the wrecked vehicle while intoxicated, and Officer Morgan's report of finding a cold, partially consumed open container in the wrecked vehicle created ample, specific, articulable facts that led Officer Warner reasonably to conclude Appellee had been driving while intoxicated. Officer Warner did not perform field sobriety tests until after he had a reasonable suspicion Appellee had been driving while intoxicated. Finally, Appellee was arrested only after he failed the field sobriety tests.

**D. Consensual Encounter Does Not Require Reasonableness Burden**

Appellee further contends the State failed to carry its burden of proof to establish a consensual encounter between Officer Warner and Appellee. To suppress evidence because of a Fourth Amendment violation, the State bears the burden of establishing the reasonableness of a warrantless detention after the accused individual meets the initial burden of producing evidence rebutting the presumption of proper police conduct by producing evidence of a

17

warrantless seizure or arrest. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

However, a consensual encounter is not a warrantless detention, seizure, or arrest. *Velasquez*, 994 S.W.2d at 678. Thus, it does not violate the Fourth Amendment and requires no articulable suspicion or probable cause by which reasonableness must be determined. *Id.*; *St. George,* 197 S.W.3d at 819; *see Royer*, 460 U.S. at 497–98 (1983).[3] "An officer needs no justification for a consensual encounter, which triggers no constitutional protections." *Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

Proper police conduct is presumed. *See Amador*, 221 S.W.3d at 672–73. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Id.* (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986); *Derichsweiler v. State,* 301 S.W.3d 803, 808 (Tex. App.—Fort Worth, pet. filed); *Morris v. State*, 50 S.W.3d 89, 94 (Tex. App.—Fort Worth 2001, no pet.). The dissent appears to overlook the

---

[3] "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street . . . , by putting some questions to him if the person is willing to listen, or by offering in evidence . . . his voluntary answers to such questions." *Gearing v. State*, 685 S.W.2d 326, 328 (Tex. Crim. App. 1985) (quoting *Royer*, 460 U.S. at 497, 103 S. Ct. at 1324), *overruled on other grounds by Woods*, 956 S.W.2d at 38.

first prong of this presumption: a defendant must establish that (1) a search or seizure occurred (2) without a warrant. *See Amador*, 221 S.W.3d at 672; *Davidson v. State*, 249 S.W.3d 709, 717–18 (Tex. App.—Austin 2008, no pet.) (citing *Russell*, 717 S.W.2d at 9). Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 673; *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

Here, the trial court erroneously applied the law to the facts in concluding that "Officer John Warner failed to articulate specific facts that supported a reasonable suspicion that [Woodard] had committed any criminal offense *before* [he] performed the investigative detention of Mr. Woodard on May 17, 2008." [Emphasis added.] There is no evidence that Appellee was "seized" prior to Officer Warner asking Appellee to perform standardized field sobriety testing. Thus, we presume that up to the point that Officer Warner requested Appellee to perform field sobriety testing, "no intrusion upon constitutionally protected rights had occurred." *See Terry*, 392 U.S. at 20 n.16, 88 S. Ct. at 1879 n.16 (holding that because the record was unclear "whether any . . . 'seizure' took place" before an officer initiated physical contact to conduct a search, the court assumed no violation of any constitutionally protected rights).

19

Because Appellee's detention began when Officer Warner asked him to perform standardized field sobriety testing, *not* when Officer Warner initially approached and posed questions to Appellee, Officer Warner did articulate specific facts that supported a reasonable suspicion that [Appellee] had committed a criminal offense *before* detaining Appellee. Specifically, Officer Warner testified that, after approaching Appellee, he observed Appellee's bloodshot and glazed eyes, unsteadiness, staggering walk, and odor of alcohol on his breath and body. These observations, Appellee's admission that he drove the wrecked vehicle while intoxicated, and Officer Morgan's report of finding a cold, partially consumed open container in the wrecked vehicle created ample, specific, articulable facts that led Officer Warner reasonably to conclude Appellee had been driving while intoxicated.

We conclude that Officer Warner's initial approach and questioning of Appellee were permitted because that conduct did not constitute an investigative detention, but was instead a consensual encounter.[4] As we previously explained, this consensual encounter between Officer Warner and Appellee transitioned to a warrantless detention and arrest only after reasonable

---

[4] At the hearing on the motion to suppress, the State argued Officer Warner did not need any reasonable suspicion or probable cause to talk to Appellee. Because the consensual encounter theory was presented to the trial court and preserved for our review, we may reverse the judgment on this theory. *See State v. Bailey*, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006).

suspicion became apparent to Officer Warner through the totality of the circumstances—enabling the State to fulfill its burden of establishing the reasonableness of Appellee's warrantless detention and arrest. *See Ford*, 158 S.W.3d at 492.

### E. Evidence Admissible After a Valid Arrest

Appellee argues that because Officer Warner did not see Appellee driving while intoxicated, the officer's arrest of Appellee was unlawful and "the evidence which the State seeks to introduce was the fruit of the unlawful . . . arrest."

The code of criminal procedure provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 2005). The test for probable cause for a warrantless arrest under this provision is "[w]hether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990); *see Astran v. State*, 799 S.W.2d 761, 764 (Tex. Crim. App. 1990) (noting that in making an article 14.01 arrest, officer may rely on other officers and on lay citizens in determining that probable cause exists to believe an offense was committed). Thus,

21

although the statute states that the offense must be one that is committed within the officer's presence or view, an officer can make a warrantless arrest based on an offense that was committed at an earlier time and further, the officer does not even have to personally see the offense committed before the warrantless arrest is justified under article 14.01(b).

*Akins v. State,* 202 S.W.3d 879, 889 (Tex. App.—Fort Worth 2006, pet. ref'd).

Here, the trial court erroneously applied the law to the facts and concluded that "[b]ecause no officer saw [Appellee] driving or otherwise operating a motor vehicle, Warner's warrantless arrest of [Appellee] on May 17, 2008, was not proper." Instead, the record evidence demonstrates probable cause based on Officer Warner's personal observations that Appellee appeared intoxicated and failed the field sobriety tests, coupled with the officer's personal knowledge from Appellee's admission that he had driven the wrecked vehicle while "drunk" and from Officer Morgan's informing him that he found a cold can of beer in the wrecked vehicle.[5] *See Beverly*, 792 S.W.2d at

---

[5] Although the trial court's findings of fact do not reference this testimony, this is not a case in which we must imply that the trial court did not believe the officers' testimony. *See State v. Sheppard*, 271 S.W.3d 281, 286 (Tex. Crim. App. 2008); *cf. Ross*, 32 S.W.3d at 856–57 (noting that when trial court grants motion to suppress without providing explanation where only evidence is officer's testimony, trial court may have disbelieved officer on at least one material fact or may have found that the testimony, while credible, did not establish probable cause). The record does not suggest that the trial court did not believe the officers' testimony. *See Sheppard*, 271 S.W.3d at 286. Instead, the trial court's findings and conclusions—which were drafted by Appellee's attorney—show that the trial court concluded that the facts, as

22

104–05 (Tex. Crim. App. 1990); *see also* Tex. Penal Code Ann. § 49.04(a) (Vernon 2003) ("A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place."). Thus, the evidence demonstrates probable cause to arrest Appellee for driving while intoxicated based upon the officer's personal knowledge and personal observations of Appellee's behavior. *See Beverly*, 792 S.W.2d at 104–05; *Akins*, 202 S.W.3d at 889.[6] Accordingly, we hold that Officer Warner's arrest of Appellee was lawful.

We agree with the State's argument that a police officer may pose questions to a fellow citizen without justification. Officer Warner's initial approach and questioning of Appellee was consensual, and this consensual encounter escalated into an investigative detention supported by reasonable suspicion that Appellee had been driving while intoxicated. The transaction,

---

testified to by the officers, did not constitute probable cause. *See Ross*, 32 S.W.3d at 856–57.

[6] *See also Kelley v. State,* No. 02-06-339-CR, 2008 WL 110517, *2 (Tex. App.—Fort Worth 2008, pet. ref'd) (officer's labeling of arrest as being for DWI when he had not observed defendant driving did not invalidate arrest because probable cause existed for public intoxication arrest) (citing *Warrick v. State,* 634 S.W.2d 707, 709 (Tex. Crim. App. [Panel Op.] 1982)); *Reynolds v. State,* 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet.ref'd) (officer's testimony that he arrested defendant for DWI, rather than public intoxication, did not invalidate arrest where record supported warrantless arrest for public intoxication).

23

from initial questioning by Officer Warner through Appellee's arrest, was lawful. Thus, the trial court erred by granting Appellee's motion to suppress evidence.

## V. Conclusion

Having sustained the State's issue, we reverse the trial court's order and remand the case for further proceedings consistent with this opinion.

ANNE GARDNER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  April 1, 2010



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-052-CR

THE STATE OF TEXAS                                                    STATE

V.

DAVID WAYNE WOODARD                                               APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

## DISSENTING OPINION

------------

The trial court granted Woodard's motion to suppress. The State is the

appellant. Our mandate is clear:

> If the trial court's ruling regarding a motion to suppress is reasonably supported by the record and is correct under any theory of law applicable to the case, the reviewing court must affirm.[1]

---

[1] *Young v. State,* 283 S.W.3d 854, 873 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009) (citing *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990)).

Consequently, in this case we may reverse the trial court only if we replace the trial judge's determinations of credibility with our own or if, deferring to his determinations of credibility and viewing all the evidence only in the light most favorable to the trial court's ruling, we conclude that there is no theory of law supported by the record as viewed by the trial court that could support the trial court's ruling.

Certain well established rules govern our appellate review:

> In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted. This is so because it is the trial court that observes first hand the demeanor and appearance of a witness, as opposed to an appellate court which can only read an impersonal record.[2]

The trial court filed written findings of fact and conclusions of law, clearly setting out the trial court's determinations of credibility. Again, the law is well established: "In reviewing a trial court's ruling on a motion to suppress,

---

[2] *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) (citing *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999); *Allridge v. State*, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991), *cert. denied*, 510 U.S. 831 (1993); *Meek v. State*, 790 S.W.2d 618, 620 (Tex. Crim. App. 1990); *Mattias v. State*, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987); *State v. Fecci*, 9 S.W.3d 212, 221 (Tex. App.—San Antonio 1999, no pet.)).

2

appellate courts must view all of the evidence in the light most favorable to the

trial court's ruling."[3]  When, as here,

> [i]n a motion to suppress hearing where the only evidence
> presented is the testimony of the arresting officer (which, if
> believed, adds up to probable cause) . . . [t]he trial court may have
> disbelieved the officer on at least one material fact, or the trial
> court may be in a situation in which it does not know what exactly
> the facts are, but it does know (on the basis of demeanor,
> appearance, and credibility) that they are not as the witness
> describes. In this situation, the appellate court does not necessarily
> have a set of historical facts to which it may apply the law.  The
> determination of probable cause rests entirely on the credibility of
> the lone witness.  This scenario is a mixed question of law and
> fact, the resolution of which turns on an evaluation of credibility
> and demeanor.  The proper standard of review is therefore the
> second category of *Guzman*, "almost total deference" to the trial
> ruling.[4]

Even if the trial court does not make explicit findings of fact,

> the appellate court infers the necessary factual findings that
> support the trial court's ruling if the record evidence (viewed in the
> light most favorable to the ruling) supports these implied fact
> findings.  Thus, we afford almost total deference to a trial judge's
> determination of the historical facts that the record supports,
> especially when his implicit factfinding is based on an evaluation of
> credibility and demeanor.  This same highly deferential standard
> applies regardless of whether the trial court has granted or denied
> a motion to suppress evidence.  Thus, the party that prevailed in
> the trial court is afforded the strongest legitimate view of the

---

[3] *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

[4] *Ross,* 32 S.W.3d at 856.

evidence and all reasonable inferences that may be drawn from that evidence.[5]

Although "whether a given set of historical facts amounts to a consensual police-citizen encounter or a detention under the Fourth Amendment is subject to *de novo* review because that is an issue of law—the application of legal principles to a specific set of facts,"[6] we do not re-write the facts in order to legitimate the police-citizen contact under the guise of employing a presumption of correct police activity. A presumption of correct police activity is not a presumption that any witness is telling the truth. A presumption of correct police activity is not a mandate that the trial judge must automatically believe witnesses who testify to justify police activity. We cannot and must not substitute our determination of the facts and the credibility of the witnesses in order to achieve the result that we believe the trial court should have reached.

We do know that the trial court believed Officer Warner when he testified that Woodard was not so intoxicated that he constituted a threat to himself or to others. We also know that the trial court believed Officer Warner when he testified that Woodard was walking without staggering or otherwise indicating that he was intoxicated.

---

[5] *Garcia-Cantu,* 253 S.W.3d at 241.

[6] *Id.*

4

This case is controlled in part by article 14.01 of the Texas Code of Criminal Procedure and the reasoning of *State v. Steelman*.[7]  Article 14.01 provides,

> (a) A peace officer or any other person, may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or as an offense against the public peace.
>
> (b) A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.[8]

In upholding the trial court's suppression of evidence, the *Steelman* court held that the arresting officers did not have probable cause to believe that Steelman had committed an offense in their presence, even though they had received a tip that someone at his residence was dealing drugs and officers personally smelled the odor of marijuana in the air when Steelman opened the front door.[9]  The officers had no personal knowledge regarding who was smoking or possessing marijuana.[10] Consequently, the officers had no authority

---

[7] Tex. Code Crim. Proc. Ann. art. 14.01 (Vernon 2005); *State v. Steelman*, 93 S.W.3d 102 (Tex. Crim. App. 2002).

[8] Tex. Code Crim. Proc. Ann. art. 14.01.

[9] *Steelman*, 93 S.W.3d at 108.

[10] *Id.*

5

to make a warrantless arrest.[11] Nor could the State justify the officers' actions based on a theory not relied on in the trial court.[12]

In the case now before this court, no officer observed Woodard commit any offense. Information about the car in the ditch came from a person who "did not provide any contact information (name, address, telephone number, date of birth, etc.) to the dispatcher so that the tipster could be located at a later date." The anonymous tip did not satisfy the requirement that the officers personally view the commission of the misdemeanor in order to justify the warrantless misdemeanor arrest.[13]

The majority, in setting aside the trial court's finding of facts and determinations of credibility, relies on two cases in which the arresting officer did not see the defendant commit the misdemeanor DWI offense for which he arrested the defendant.[14] Because the officer in each case testified that he observed the offense of public intoxication, the cases hold that an officer who sees a person commit the offense of public intoxication may properly arrest that

---

[11] *Id.*

[12] *Id.* at 107.

[13] *See* Tex. Code Crim. Proc. Ann. art. 14.01.

[14] *Reynolds v. State*, 902 S.W.2d 558 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *Kelley v. State*, No. 02-06-339-CR, 2008 WL 110517 (Tex. App.—Fort Worth 2008, pet. ref'd) (mem. op., not designated for publication).

6

person for public intoxication even though the officer believes he is arresting for DWI; assigning the wrong name to the offense does not invalidate the arrest.[15]

But there are two problems with the majority's relying on this line of cases in reversing the trial court's determinations of credibility of facts and of law. First, the State did not argue to the trial court that Officer Warner observed Woodard commit the offense of public intoxication, and the State did not argue that Officer Warner could have arrested Woodard for public intoxication. The State is the appellant. This court cannot reverse the trial court's ruling on a ground not raised by the appealing party below.[16]

The second problem with the majority's attempt to set aside the trial court's determinations of credibility of facts and of the law is that there is no evidence that Officer Warner observed Woodard commit the offense of public intoxication, but there is affirmative evidence that Officer Warner did not observe Woodard commit the offense of public intoxication. A person commits the offense of public intoxication only when "the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."[17]

---

[15] *Reynolds*, 902 at 560 & n.3; *Kelley*, 2008 WL 110517, at *2.

[16] *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998).

[17] Tex. Penal Code Ann. § 49.02(a) (Vernon Supp. 2009).

7

Officer Warner testified,

Q.    And there was nothing about the way that Mr. Woodard was
      walking that was illegal, correct?

A.    No, sir, nothing illegal.

Q.    All right.  In other words, he wasn't walking in the street in
      a manner which was dangerous to other people?

A.    No, sir.  As a matter of fact, I believe he was walking on a
      sidewalk, a public sidewalk.

. . .

Q.    So he certainly wasn't endangering anyone?

A.    No, sir, he was not.

Q.    He wasn't endangering himself?

A.    No, sir, he was not.

Q.    So you didn't think he was committing the offense of public
      intoxication at that time, correct?

A.    No, sir, I did not.[18]

Officer Warner specifically denied that he personally observed Woodard

commit the offense of public intoxication.  The State, therefore, did not rely in

the trial court on the theory that Officer Warner personally observed Woodard

---

[18] ▲ I R.R. at 37–38.

8

commit the offense of public intoxication.  The trial court believed that Officer

Warner was telling the truth.

Again, our mandate is

to uphold the trial court's ruling on appellant's motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case.  That rule holds true even if the trial court gave the wrong reason for its ruling.  Our task, then, is to determine whether the trial court could have reasonably denied appellant's motion to suppress given the record evidence and given the applicable federal and state law.[19]

The same mandate applies when the trial court grants a motion to

suppress.[20]  "We must affirm the granting of the motion to suppress if it is

correct under any theory of law applicable to the case, even if not raised by

appellee in the trial court."[21]  We must do so, in part, because

[i]n a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  Accordingly, the judge may believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted.  This is so because it is the trial court that observes firsthand the demeanor and appearance of a

---

[19] *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (citations omitted), *cert. denied*, 541 U.S. 974 (2004).

[20] *Ross*, 32 S.W.3d at 855.

[21] *State v. Stevens*, 187 S.W.3d 565, 567 (Tex. App.—Houston [14th Dist.] 2006), *rev'd on other grounds*, 235 S.W.3d 736 (Tex. Crim. App. 2007).

witness, as opposed to an appellate court which can only read an impersonal record.[22]

The trial court entered findings of fact and conclusions of law that clearly indicated that no officers observed Woodard commit a misdemeanor offense in their presence. At no time has the State claimed, and there is no evidence that there was any suspicion, reasonable or otherwise, that Woodard committed a felony.

Additionally, there is neither a videotape nor an audio recording of Woodard's detention or his purported admissions, and the record contains no indication that Officer Warner complied with article 2.133 or article 2.135 of the Texas Code of Criminal Procedure.[23]

The majority states that Woodard did not disprove Officer Warner's representation that the encounter was consensual. The majority, however, improperly places the burden of proof on the citizen detained rather than on the State. The law is well established that while the person seized originally bears the burden of proof at the suppression hearing, once the defendant establishes the fact that his arrest was warrantless, the "burden then shift[s] to the State

---

[22] *Ross*, 32 S.W.3d at 855.

[23] Tex. Code Crim. Proc. Ann. arts. 2.133, 2.135 (Vernon Supp. 2009).

10

to establish that the seizure was conducted pursuant to a warrant or was reasonable."[24] This burden is a burden of persuasion.

It is uncontested that Woodard was detained and then arrested without a warrant. Contrary to the majority's statement, there is no presumption of proper police conduct to justify the warrantless detention. There was no such presumption for Woodard to overcome. The burden was on the State to justify the warrantless detention and arrest. The State attempted to do this by persuading the trial court that the probable cause to arrest was lawfully obtained as the result of a consensual encounter that included voluntary responses to the officer's questions after the officer stopped Woodard, who was walking down the sidewalk. The officer admitted that he stopped Woodard and questioned him, but the officer claimed that the answers were volunteered.[25] He also admitted that he required Woodard to perform field sobriety tests after Woodard responded to his questions.

Because the State is appealing, reversal is required only if the trial court abused its discretion by failing to uphold the detention and arrest on a ground

---

[24] *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002); *see Sieffert v. State,* 290 S.W.3d 478, 484 & n.8 (Tex. App.—Amarillo 2009, no pet.) (quoting *Bishop*).

[25] I R.R. at 24.

11

proved and argued by the State in the trial court. The Texas Court of Criminal

Appeals has explained this well established rule:

> Ordinary notions of procedural default should apply equally to the defendant and the State. Therefore we hold that in cases in which the State is the party appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense. In the instant case, once Appellee established standing in the premises to be searched and that the search was conducted without a warrant, he satisfied his burden of establishing his Fourth Amendment claim and the burden shifted to the State to establish an exception to the warrant requirement. The only theory argued by the State and presented by the facts was that the search was a proper inventory. The trial court's ruling was specifically limited to the facts and legal arguments presented to it. Thus the trial court cannot be held to have abused its discretion in ruling on the only theory of law presented to it.[26]

The burden was not on Woodard to prove that his detention and arrest

were not reasonable. It is uncontested that he was arrested and prosecuted for

misdemeanor DWI. The trial court so found. No officer observed Woodard

commit any misdemeanor offense. The trial court so found.

Although courts speak of a person's being free to leave when a police

officer approaches him, courts also hold fairly regularly that walking or running

away when an officer approaches provides reasonable suspicion for the officer

to detain the person. It is, indeed, a lose, lose situation for any person a police

---

[26] *Mercado*, 972 S.W.2d at 78.

officer wants to speak to. He is free to leave, unless he leaves. When the officer approached Neal in *Neal v. State*, Neal ran when the officer asked him for identification.[27] Running was a suspicious circumstance.[28] In *Clarke v. State*, this court held that the officer lawfully detained the defendant because he matched the description of a white male with large thighs and buttocks wearing dark shorts and a white t-shirt, and "Clarke's activity was not as consistent with innocent activity as with criminal activity when he ran away from the officer."[29] In *Guzman v. State*, a drug dealer pointed out a person who, he reported to the police officer, had some heroin.[30] As the officer approached him, Guzman walked away and appeared to swallow. These actions created both reasonable suspicion and an exigent circumstance justifying the officer's seizing Guzman.[31]

---

[27] 256 S.W.3d 264, 281 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009).

[28] *Id.*

[29] 785 S.W.2d 860, 868–69 (Tex. App.—Fort Worth 1990), *aff'd*, 811 S.W.2d 99 (Tex. Crim. App.), *cert. denied*, 502 U.S. 946 (1991).

[30] 955 S.W.2d 85 (Tex. Crim. App. 1997).

[31] *Id.* at 91–92.

In *Johnson v. State,*[32] the defendant ran when the police appeared. Although they saw no offense and had no report of any offense, the officers chased him and yelled for him to stop. Because he did not yield to their show of authority, there was no seizure, although they chased him down until they actually caught him.[33] By the time they tackled him, they had reasonable suspicion to detain him for questioning because they saw him carrying something purple and thought he might have a gun, and he had acted suspiciously by running. The *Johnson* courts followed the mandate of *California v. Hodari, D.*[34] Perhaps, a person is free to walk slowly away from a consensual encounter, but not to run or to walk quickly away. Running or walking too fast creates reasonable suspicion.

But in the case now before this court, Woodard did not walk away. The State therefore did not and could not rely on a "walking away" justification.

The trial court's factual determinations are supported by the record, and we may not disturb them. Nor may this court substitute its determinations of credibility for those of the trial court. And this court is bound to consider only

---

[32] *J*864 S.W.2d 708, 715–16 (Tex. App.—Dallas 1993) (*Johnson I*), *aff'd*, 912 S.W.2d 227 (Tex. Crim. App. 1995) (*Johnson II*).

[33] *Johnson II*, 912 S.W.2d at 235; *Johnson I*, 864 S.W.2d at 715–16.

[34] 499 U.S. 621, 626–28, 111 S. Ct. 1547, 1551 (1991).

14

the grounds for affirming the detention that the State relied on in the trial court. We cannot go out and find a ground for reversing the trial court that the State did not present to the trial court. The law and the facts require that we affirm the trial court's granting of the motion to suppress. Because the majority does not, I must respectfully dissent from the majority's thorough and carefully written opinion.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: April 1, 2010

15