

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 2-09-391-CR

ALICIA MARGUERITE MUNOZ                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM COUNTY CRIMINAL COURT NO. 2 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Alicia Marguerite Munoz was arrested and charged with driving while intoxicated (DWI). She entered a plea of nolo contendere, and the trial court sentenced her to 120 days' confinement and a $600 fine. The court suspended the jail portion of the sentence and placed her on twelve months'

---

[1]*See* Tex. R. App. P. 47.4.

community supervision.  Munoz now appeals.  In a single point, Munoz claims the trial court erred by denying her motion to suppress.  We will affirm.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

At 2:46 a.m. on March 28, 2008, Carrolton Police Officer Geoff Smyder observed Munoz traveling on Hebron Parkway at twenty-five miles per hour in a posted forty-five miles-per-hour zone.  Officer Smyder then observed Munoz pull into the small, dimly lit parking lot of Discount Moving Boxes and stop for twenty to thirty seconds with her car running.  The parking lot has only one ingress and egress onto Hebron.  Believing Munoz was lost and concerned for her welfare, Officer Smyder pulled his patrol vehicle into the parking lot, activated his overhead lights, and approached Munoz's vehicle to offer assistance.  Munoz was alone in her vehicle.  She rolled down her window as Officer Smyder was approaching her vehicle.  The officer asked her if she was lost, and she replied that she was trying to get home.  Immediately upon speaking with Munoz, Officer Smyder noticed that her speech was very slurred and that a strong odor of alcohol emanated from her breath.  Officer Smyder then detained Munoz to investigate her for DWI.  He requested a back-up officer, and one arrived shortly.  Officer Smyder administered the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test on Munoz.  Munoz failed all three field sobriety tests, and Officer Smyder arrested her for DWI.  She later agreed to give a specimen of her breath.  Two separate tests indicated that she had a BAC of .123 and .124.

2

Munoz filed a motion to suppress, complaining that Officer Smyder had detained her without reasonable suspicion or probable cause and had arrested her without a warrant. Officer Smyder was the sole witness to testify at the suppression hearing. There was not an in-car video for the court to review; Officer Smyder testified that his video recorder was probably not working at the time and that he was unaware whether the back-up officer who responded to the scene had activated his video recorder. At the conclusion of the hearing, the trial court took the motion to suppress under advisement and requested that the parties file bench briefs on the validity of the detention. Both parties did so, and Munoz requested findings of fact and conclusions of law, which the trial court filed.

The trial court denied Munoz's motion to suppress and found that, given the totality of the circumstances, a reasonable person could have believed that Munoz was in need of help and found that Officer Smyder acted reasonably when he stopped Munoz's vehicle out of concern for her welfare. In addition, the trial court found that Officer Smyder's detention of Munoz fell within the community caretaking exception to the warrant requirement of the Fourth Amendment.

### III. MOTION TO SUPPRESS

In her sole point, Munoz complains that the trial court erred by denying her motion to suppress because Officer Smyder had no legitimate reason for stopping her vehicle. She contends that there was no evidence of an emergency

3

or medical need that would have prompted a reasonable officer to initiate the detention.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those

4

questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the motion to suppress hearing is the arresting officer, the only question before us is whether the trial court properly applied the law to the facts it found. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 86–87, 89.

### B.  Community Caretaking Function

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.  U.S. Const. amend. IV. An officer's community caretaking function is a reasonable exception to the warrant requirement of the Fourth Amendment, and the exception is narrowly applied. *Wright v. State*, 7 S.W.3d 148, 151–52 (Tex. Crim. App. 1999).  Under the community caretaking exception, an officer may stop and assist an individual whom a reasonable person would believe is in need of help, given the totality of the circumstances. *Id.*  Reasonable suspicion or probable cause that an offense has been committed is not required. *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002).  In fact, an officer's community caretaking function must be

5

"totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528 (1973). Thus, "a police officer may not properly invoke his community caretaking function if he is primarily motivated by a non-community caretaking purpose." *Corbin*, 85 S.W.3d at 277 (citing *Wright*, 7 S.W.3d at 151).

Determining whether the officer properly invoked his community caretaking function is a two-step process. *State v. Woodard*, No. 02-09-00052-CR, 2010 WL 1268035, at *3 (Tex. App.—Fort Worth Apr. 1, 2010, pet. filed) (citing *Corbin*, 85 S.W.3d at 277); *Swaffar v. State*, 258 S.W.3d 254, 260 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Corbin*, 85 S.W.3d at 277). First, the reviewing court must determine whether the officer was primarily motivated by a community caretaking purpose. *Woodard*, 2010 WL 1268035, at *3. Second, the court must determine whether the officer's belief that his assistance was required was reasonable. *Id.*

To determine whether an officer acted reasonably in exercising his community caretaking function, the following list of non-exclusive factors may be considered: (1) the nature and level of distress exhibited by the individual; (2) the individual's location; (3) whether the individual was alone or had other access to assistance besides that of the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Wright*, 7 S.W.3d at 151–52. "Because the purpose of the community caretaking exception is to allow an

6

officer to 'seize' and assist an individual whom he reasonably believes is in need of help, the first factor is entitled to the greatest weight." *Corbin*, 85 S.W.3d at 277. "The greater the nature and level of distress exhibited, the more likely the police involvement will be a reasonable exercise of the community caretaking function." *Id.* However, the weight of the first factor will not always be dispositive, and the other three remaining factors, and any other relevant factors, help to define the first factor. *Id.*

### C.  Community Caretaking Function Was Properly Invoked

Here, regarding the first step—determining whether Officer Smyder was primarily motivated by his community caretaking function—no evidence in the record suggests that Officer Smyder was motivated by any other purpose than one of community caretaking.  He testified that he was not concerned with whether Munoz was engaged in, or about to be engaged in, any type of criminal activity, that he thought Munoz was lost—although he stated in his report that he stopped her for a "welfare check" because it "sounded better"—and that her safety or well-being was his primary concern.  The trial court found that Officer Smyder's testimony was "credible, persuasive, and straightforward."  The trial court reasonably could have found that Officer Smyder was primarily motivated by his community caretaking function. *See Corbin*, 85 S.W.3d at 277; *Gibson v. State*, 253 S.W.3d 709, 715 (Tex. App.—Amarillo 2007, pet. ref'd); *Franks v. State*, 241 S.W.3d 135, 144 (Tex. App.—Austin 2007, pet. ref'd); *Bilyeu v. State*, 136 S.W.3d 691, 698 (Tex. App.—Texarkana 2004, no pet.).

7

We next determine whether the trial court properly applied the law to its factual findings regarding whether Officer Smyder reasonably believed his assistance was required. Applying the first *Wright* factor (the nature and level of distress exhibited by Munoz), Munoz was traveling at almost half the posted speed limit, twenty-five miles per hour in a forty-five mile-per-hour zone. Although there is not a posted minimum speed limit on Hebron Parkway and driving below the speed limit is not a traffic violation, a reasonable person could view driving at almost half the posted speed limit as a sign of distress. *See Bilyeu*, 136 S.W.3d at 698 (holding officers justified in believing significant level of distress exhibited when defendant traveled at ten miles per hour, which was fifteen miles per hour less than the posted speed limit); *Ortega v. State*, 974 S.W.2d 361, 364 (Tex. App.—San Antonio 1998, pet. ref'd) (holding stop fell within community caretaking exception where defendant traveled between eighteen and twenty miles per hour, less than half of the posted fifty-miles-per-hour speed limit); *see also Tex. Dep't of Pub. Safety v. Svoboda*, No. 04-05-00796-CV, 2006 WL 1684793, at *1, *3 (Tex. App.—San Antonio June 21, 2006, pet. denied) (mem. op., not designated for publication) (holding community caretaking function was justified when defendant was traveling twenty miles per hour under the speed limit in the early hours of the morning).

Additionally, assisting a driver who appears to be lost—as Munoz appeared to Officer Smyder—can also fall within an officer's community caretaking function. *See Chilman v. State*, 22 S.W.3d 50, 53, 55 (Tex. App.—

8

Houston [14th Dist.] 2000, pet. ref'd) (holding exception applied when officer detained occupants to possibly provide directory assistance because they appeared lost); *but see Salinas v. State*, 224 S.W.3d 752, 755–57 (Tex. App.— San Antonio 2007, pet. ref'd) (holding exercise of function was not objectively reasonable when officer thought driver was lost because he pulled further out into a T-intersection than normal before turning). Here, the trial court found that "[t]he unusually low speed that [Munoz] was traveling and the fact that [she] pulled into a parking lot of a closed business indicated a level of distress that led Officer Smyder to reasonably believe that she was lost and in need of assistance." Therefore, the first *Wright* factor supports the application of the community caretaking function.

Regarding Munoz's location (the second *Wright* factor), Munoz stopped in a closed business's "small and dimly lit" parking lot "with only one ingress and egress onto Hebron Parkway." Munoz's location also supports the application of the community caretaking function. *See Morfin v. State*, 34 S.W.3d 664, 667 (Tex. App.—San Antonio 2000, no pet.) (holding exception applied when officer stopped car in a dark, high crime area, even when there were multiple passengers and no one exhibited any signs of distress).

Regarding whether Munoz was alone or had access to assistance (the third *Wright* factor), the record indicates, and the trial court found, that Munoz was alone in her car and that she "had no access to assistance independent of Officer Smyder." Officer Smyder testified that there was a house next to the

9

isolated parking lot but that no one was outside the house at that time of night. There were also businesses and churches nearby, but all were closed. Therefore, it was not unreasonable for Officer Smyder to conclude that Munoz did not have access to assistance. *See, e.g.*, *Doiron v. State*, 283 S.W.3d 71, 75 (Tex. App.—Beaumont 2009, no pet.) (holding community caretaking exception applied when one of the four factors supporting the stop was that defendant was alone in his vehicle with no one but the officer to lend him aid); *Bilyeu*, 136 S.W.3d at 698 (holding stop was within community caretaking function when defendant was traveling alone in her vehicle fifteen miles per hour under the posted speed limit); *see also Yocom v. State*, No. 02-03-00181-CR, 2004 WL 742888, at *7 (Tex. App.—Fort Worth Apr. 8, 2004) (mem. op., not designated for publication) (holding community caretaking exception applied when one of the four factors supporting the stop was that defendant was alone in his vehicle, asleep or unconscious, and stopped at a closed business late at night with no other cars around), *pet. ref'd*, 149 S.W.3d 159 (2004).

Finally, the fourth *Wright* factor—whether Munoz posed a danger to herself or others if not assisted—weighs against the application of the community caretaking function. Officer Smyder testified that he did not see anything to indicate that Munoz was a danger to herself or others, and the trial court did not make any historical finding of fact on whether Munoz appeared to be in danger. However, not all factors must support the application of the exception in

10

determining whether the officer acted reasonably in exercising his community caretaking function.  *See Corbin*, 85 S.W.3d at 277; *Wright*, 7 S.W.3d at 152.

Applying the *Wright* factors to the facts found by the trial court, we hold that Officer Smyder's exercise of his community caretaking function was reasonable and that the trial court properly applied the law to the historical facts it found and did not err in denying Munoz's motion to suppress.[2]  *See Gray*, 158 S.W.3d at 467, 469; *Guzman*, 955 S.W.2d at 86–87, 89.  We therefore overrule Munoz's sole point.

## IV.  CONCLUSION

Having overruled Munoz's sole point, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 19, 2010

---

[2]Because we affirm the trial court's denial of the motion to suppress on the ground that the community caretaking exception applies, we do not reach the State's argument that this was a voluntary encounter and not subject to Fourth Amendment protection.  *See* Tex. R. App. P. 47.1.

11