

## NUMBER 13-13-00085-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

T.W. LEE NELSON,                                                       Appellee.

On appeal from the 28th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Perkes and Longoria**
**Memorandum Opinion by Justice Longoria**

This is an interlocutory appeal by the State challenging the trial court's order suppressing all evidence and testimony arising out of the interaction between Corpus Christi Police Officer David Saldana (Officer Saldana) and appellee T.W. Lee Nelson (Nelson).  We affirm.

## I. BACKGROUND

The State indicted Nelson for assault on a public servant and attempting to take a weapon from a police officer. *See* TEX. PENAL CODE ANN. §§ 22.01(a), (b)(1), 38.14(b) (West 2011). Nelson filed a motion asking the trial court to suppress the entire encounter between Nelson and Officer Saldana, arguing that Officer Saldana unlawfully detained Nelson from the beginning of the encounter in violation of the Fourth Amendment to the United States Constitution. *See* U.S. CONST. amend. IV. The trial court held an evidentiary hearing on Nelson's motion. At the hearing, Nelson and Officer Saldana testified regarding the encounter. Nelson and Officer Saldana's testimony about the interaction differed significantly; we will discuss each separately.

### A. Testimony of Officer Saldana

Officer Saldana testified that he was driving across a bridge near the Corpus Christi campus of Texas A&M University at around 1:00 a.m. when he observed Nelson standing still on a sidewalk, facing out towards the water. Officer Saldana first thought that Nelson was fishing, but he did not stop because he was on his way to assist another officer.[1] Several minutes later, Officer Saldana learned that his assistance was no longer needed, and he returned to where he had seen Nelson. Officer Saldana testified that even though several minutes had passed, Nelson "was standing exactly where he was before." Officer Saldana told the court that he thought it was strange because Nelson "hadn't moved at all" and because "most people shift legs, they do something a little bit different" after standing in one place for several minutes. Officer Saldana testified that he pulled his car up to the sidewalk, rolled down the window and called out, "hey man,

---

[1] Saldana testified that "[y]ou can't fish from that bridge, there are signs posted."

everything ok?" Officer Saldana told the court that he had "full intention of making sure this guy was okay and keep on driving to my next call," which was already coming in over his radio. Officer Saldana related that Nelson "slowly turned around and started approaching my unit. He started crouching and he started yelling these—there is no other way to say it other than they were not normal sayings." Officer Saldana did not remember Nelson's statements "exactly, but one of them was like, you know, do you want to press me, and something about the oppressors."

Officer Saldana testified that did not perceive Nelson as a threat at the time, but he thought "something wasn't right with [Nelson]." Officer Saldana testified that he thought that Nelson was "either intoxicated[,] . . . on drugs, or he's a mental health patient," and that Nelson might be "a danger to himself and others" as a result. Officer Saldana stepped up onto the sidewalk and said "hey, man, come on up here and talk to me up here. What's going on with you?" Officer Saldana stated that Nelson was still "screaming at the top of his lungs" about "assassins and oppressors," how Officer Saldana "wasn't going to murder him," and that Nelson was going to "kick [Officer Saldana's] butt." Nelson then took off his hat and backpack and placed three bags that he had been carrying onto the ground. Officer Saldana testified that he viewed this behavior as a threat because "if you have grown up in South Texas, you know when people start removing clothing, the fight is about to be on." Officer Saldana testified that he told Nelson to come sit in the back seat of the police car and that Nelson started to comply until Officer Saldana attempted to place handcuffs on him. According to Officer Saldana, Nelson then tried to punch him, but he "didn't connect." Nelson crouched, still "ranting and raving" and Officer Saldana "put hands" on Nelson again to "take him down

3

on the ground" in order to prevent him from "springing" at him. According to Officer Saldana, Nelson punched him again, and connected with Officer Saldana's ear. Testimony of Senior Officer Curtis Volling later established that Officer Saldana used a taser to subdue Nelson.[2]

### B. Nelson's Testimony

Nelson testified that on the night of the incident he was walking home from a coffee shop and that he was never standing still on the bridge. He denied that he was intoxicated, but he admitted that he had drunk two beers earlier that evening. Nelson stated that he was walking "directly towards" his home when a police car pulled up beside him. Officer Saldana exited the car and asked Nelson if he was walking home. Nelson responded that he was returning home and twice repeated "what are you going to do about it?" Nelson testified that Officer Saldana then grabbed Nelson's wrist and Nelson said "no." In his testimony, Nelson reiterated that he was walking home, not in any sort of distress, and that there was no reason anyone would be concerned about him.

### C. Proceedings on the Motion to Suppress

Nelson argued in his motion to suppress that he was unlawfully detained and arrested without probable cause, a warrant, or other lawful authority in violation of his rights under the Fourth Amendment. *See* U.S. CONST. amend. IV. The State argued two theories of law in opposition to Nelson's motion: (1) that the encounter between Nelson and Officer Saldana was a consensual encounter and not a detention up until the time

---

[2] Officer Volling did not witness the interaction between Nelson and Officer Saldana but arrived later, after Officer Saldana used a taser to subdue Nelson. He interviewed two women who had driven by and witnessed part of the encounter. Over Nelson's objection, he testified regarding what they told him that they had witnessed. Nelson did not present an issue renewing his objection to Officer Volling's testimony on appeal.

4

Nelson threatened to assault Officer Saldana, at which time Officer Saldana had reasonable suspicion to detain him, and (2) that even if Officer Saldana had detained Nelson from the outset of the encounter, the seizure was lawful as a valid community caretaking stop.

The trial court granted Nelson's motion to suppress and entered findings of fact and conclusions of law at the State's request. The original findings and conclusions are as follows:

## Findings of Fact

1.  The Court finds credible the testimony of [Nelson] that he was walking, not standing still on a bridge, on the night of September 1, 2012. The Court finds credible the testimony of [Nelson] that he was not vomiting or lying down at the time of contact with Officer Saldana, on the night of September 1, 2012, and that there was no evidence of distress exhibited.

2.  The Court finds credible the testimony of [Nelson] and Officer David Saldana that the location was on Ennis Joslin Road near the Texas A&M University – Corpus Christi campus where it is not unusual for students to to be walking. The Court finds credible the testimony of [Nelson] that he was a student at Texas A&M University – Corpus Christi.

3.  The Court finds credible the testimony of Officer David Saldana and [Nelson], that [Nelson] was alone and did not need assistance and was not in any danger.[3]

4.  The Court finds credible the testimony of Officer David Saldana concerning the actions of [Nelson], after the officer stopped his vehicle and questioned [Nelson], on the night of September 1, 2012.

5.  The Court finds, based on the totality of the evidence presented at the pre-trial hearing, that the entire interaction between [Nelson] and Officer David Saldana was not consensual. The Court finds credible the testimony of [Nelson] that he was walking home and did not show signs of distress when the officer stopped to ask him a question. The court finds that [Nelson] was credible, and he was detained at the time Officer David Saldana stopped his patrol vehicle.

---

[3] We note for the sake of clarity that Officer Saldana did not actually affirmatively testify that Nelson was not in distress.

5

6. The Court finds that Officer David Saldana's testimony regarding the stop and subsequent observations to be credible, but that all conversations, statements and actions occurred during an illegal detention. The Court further finds that Officer David Saldana acted unreasonably by stopping his patrol vehicle.

### Conclusions of Law

1. The Court concludes that Officer David Saldana's interaction with Nelson was not consensual.

2. The Court concludes that Officer David Saldana's stop was for a community caretaking function.

3. The Court concludes that Officer Saldana's observations prior to the detention did not meet any of the four factors necessary for a proper community caretaking stop.

4. The Court concludes that Officer Saldana acted unreasonably and violated [Nelson's] constitutional right by stopping his patrol vehicle and questioning [Nelson].

5. The Court concludes that the actions of [Nelson], statements made by [Nelson], and any other evidence in this case were gained through the unconstitutional acts of Officer David Saldana during an illegal seizure, and therefore all such evidence is to be suppressed.

The State filed an interlocutory appeal in this Court. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West Supp. 2011). Following oral argument, we abated the case for the trial court to make supplemental findings and conclusions clarifying the basis for its ruling. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). The trial court entered the following supplemental findings of fact and conclusions of law:

### Supplemental Findings of Fact

1. The Court finds credible Officer David [Saldana]'s[4] testimony that it was around 1:00 a.m. and was dark at the time.

2. The Court finds credible [Nelson's] testimony that he was walking home

---

[4] The supplemental findings and conclusions occasionally refer to Officer Saldana erroneously as "Salinas."

6

at the time of the encounter and was not in any distress.

3. The Court finds Officer Saldana's testimony regarding his justification for exercising his community care-taking authority with Nelson is not credible.

4. The Court finds Officer Saldana pulled up beside Nelson and called directly to him, expecting him to stop and respond.

5. The Court finds that once Nelson yielded to Saldana's show of authority by stopping and approaching the vehicle in response to Saldana, Saldana then got out of the marked police car and continued the detention by physically restraining Nelson.

### Supplemental Conclusions of Law

1. The Court concludes that Officer [Saldana] did not have reasonable suspicion to stop his patrol car and question Nelson, nor was Nelson in distress at the time such that Officer [Saldana] could justify his actions as community caretaking.

2. The Court concludes Officer Saldana's actions, including stopping his car besides Nelson and calling out directly to Nelson, constituted a show of authority that caused Nelson to feel compelled to stop and not free to leave.

3. Because Nelson stopped only because he felt compelled to stop by Saldana's show of authority, the Court concludes the encounter was not consensual, but a detention.

4. The Court concludes that any reasonable person in Nelson's position, alone on a dark street faced with a marked patrol unit and a command directed at him, would feel he had no choice but to yield to the officer and therefore, was not free to leave.

5. The Court concludes that Nelson was illegally detained at the time Officer [Saldana] stopped his patrol unit and questioned him, and that any evidence developed thereafter concerning completed crimes should be suppressed.

### II. DISCUSSION

By four issues, which we have reordered, the State argues that: (1) the initial interaction between Officer Saldana and Nelson was a consensual encounter until Officer

7

Saldana had reasonable suspicion to detain Nelson because Nelson threatened to assault him and, according to Officer Saldana, Nelson did, in fact, assault him; (2) even if the initial interaction was a seizure, it was valid under the community caretaking exception; (3) even if there was a seizure, the seizure was not complete because Nelson was not forced to comply until after Nelson assaulted Officer Saldana; and (4) Nelson's commission of the independent crimes of assault and attempting to take Officer Saldana's weapon were not causally connected to the seizure and therefore not subject to suppression.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We will affirm the trial court's decision on the motion to suppress if it is correct on any theory of law that is applicable to the case. *Id.* We view all of the evidence in the light most favorable to the trial court's ruling. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). We give almost total deference to the trial court's explicit findings of fact as long as the record supports them. *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We afford the "party that prevailed in the trial court . . . the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from the evidence." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). "We afford the same amount of deference to the trial judge's ruling on mixed questions of law and fact, if those rulings turned on an evaluation of credibility and demeanor." *Castleberry*, 332 S.W.3d at 465–66. However, we review de novo "pure questions of law and mixed questions of fact that do not depend on credibility determinations." *Martinez*

8

*v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011) (citing *Guzman*, 955 S.W.2d at 89). Whether the facts surrounding a particular police-citizen interaction constituted a consensual encounter or a detention is subject to de novo review because it requires an application of the law to the facts of the case. *Castleberry*, 332 S.W.3d at 466; *Garcia-Cantu*, 253 S.W.3d at 241.

## B. Consensual Encounter

The State first argues that the trial court erred in granting the motion to suppress because the interaction between Officer Saldana and Nelson was a consensual encounter until Officer Saldana developed reasonable suspicion for a detention when Nelson threatened to assault Officer Saldana by stating, "I'm gonna kick your butt."

### 1. Applicable Law

The court of criminal appeals has recognized three general categories of police-citizen encounters: "(1) consensual encounters, which require no objective justification; (2) investigatory detentions, which require reasonable suspicion; and (3) arrests, which require probable cause." *Castleberry*, 332 S.W.3d at 466 (footnotes omitted). The United States Supreme Court has held that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "An officer is just as free as anyone to stop and question a fellow citizen[,] . . . [a]nd a citizen is free to terminate a consensual encounter at will." *Castleberry*, 332 S.W.3d at 466 (footnotes omitted). So long as a reasonable person would feel free "to disregard the police and go about his business[,] . . . the encounter is consensual and no reasonable suspicion is required." *Bostick*, 501 U.S. at 434. But when an officer restrains a citizen's liberty through physical force or a show of authority, the

encounter is no longer consensual and becomes an investigative detention that requires reasonable suspicion. *Castleberry*, 332 S.W.3d at 466. There is no bright line rule for determining when an encounter turns into a seizure; courts must look to the totality of the circumstances. *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991); *Castleberry*, 332 S.W.3d at 466–67. The court of criminal appeals has explained as follows:

> When the court is conducting its determination of whether the interaction constituted an encounter or a detention, the court focuses on whether the officer conveyed a message that compliance with the officer's request was required. The question is whether a reasonable person in the citizen's position would have felt free to decline the officer's requests or otherwise terminate the encounter.

*Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010) (footnotes omitted). "The time, place, and surrounding circumstances must be taken into account, but the officer's conduct is the most important factor" in analyzing whether an interaction is a consensual encounter or a fourth amendment seizure. *Castleberry*, 332 S.W.3d at 467. Some examples of circumstances that could indicate a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Crain*, 315 S.W.3d at 49–50 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)); *see Garcia-Cantu*, 253 S.W.3d at 243 ("At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of 'We Who Must Be Obeyed.'").

Nelson, as the moving party on the motion to suppress, had the initial burden of proving that a detention occurred. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Once Nelson satisfied this burden by showing that a detention occurred, the

10

burden shifted to the State to establish the reasonableness of the detention.  *See id.*

### 2. Analysis

The State argues that the interaction between Officer Saldana and Nelson was a consensual encounter until Nelson threatened to assault Officer Saldana, at which time Officer Saldana had reasonable suspicion to detain him.  The State's argument wholly adopts the version of events described by Officer Saldana in his testimony, but the trial court found Nelson's version of events to be more credible than Officer Saldana's.  In its original findings of fact and conclusions of law, the trial court accepted Nelson's testimony that he was walking home and rejected Officer Saldana's testimony that Nelson was standing still on the bridge.  In its supplemental findings and conclusions, the trial court clarified that it found that Officer Saldana stopped his car and called out a "command" to Nelson, and that Nelson yielded to Officer Saldana's show of authority by stopping and then approaching the vehicle.  At that time, Officer Saldana "got out of the marked police car and continued the detention by physically restraining Nelson."

The State argues that the facts of this case are akin to those in *Castleberry*, in which a police officer approached two men who were walking at 3:00 a.m. behind a closed business in an area that was well-lit but deserted.  332 S.W.3d at 462.  The officer approached them, asked to see identification, and inquired what they were doing.  *Id.* When Castleberry reached for his waistband, the officer instructed Castleberry to put his hands above his head and conducted a *Terry* frisk for weapons.  *Id.* at 463 (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  The court of criminal appeals concluded that until the time the officer started the *Terry* frisk, the interaction was consensual because the officer was free to approach and question the two men.  *Id.* at 468.

11

By contrast, in *Crain*, a police officer spotted the defendant walking across another person's yard at 12:30 a.m. 315 S.W.3d at 46. The officer shined his patrol car's spotlight in the defendant's direction, rolled down the window of his vehicle, and called out: "come over here and talk to me." *Id.* at 51. The *Crain* court held that the act of shining the car's spotlight in the defendant's direction coupled with the "request-that-sounded-like-an-order" effectuated a detention because a reasonable person would not have felt free to leave. *Id.* at 51–52 (citing *Crain v. State*, No. 07-08-0224-CR, 2009 WL 2365718, at *4 (Tex. App.—Amarillo July 31, 2009) (Quinn, C.J., dissenting), *rev'd*, 315 S.W.3d 43 (Tex. Crim. App. 2010)).

The State argues that this case is more akin to *Castleberry* than to *Crain* because Officer Saldana only questioned if Nelson was "ok" and did not even ask for his identification. But as we discussed above, the trial court did not find this version of events to be credible.[5] Instead, the trial court found that Officer Saldana called out to Nelson in a way that made clear that Officer Saldana expected Nelson to stop and answer Officer Saldana's questions—i.e., "that compliance with the officer's request was required." *Id.* at 49. The trial court further found that Nelson yielded to the display of authority by stopping and approaching Officer Saldana's vehicle, and then Officer Saldana exited his vehicle and physically restrained Nelson. *See id.* at 49–50 (observing that "physical touching of the person of the citizen" as well as the use of language or tone of voice that indicates that compliance is required are factors to be considered in determining whether a seizure occurred). Moreover, this interaction took place early in the morning on a dark bridge. The court of criminal appeals has explained that: "[i]t is a reasonable inference

---

[5] We note that after we abated this appeal, the State submitted proposed findings of fact based on Officer Saldana's version of events, but the trial court declined to adopt those findings.

12

that the objectively reasonable person would feel freer to terminate or ignore a police encounter in the middle of the day in a public place where other people are nearby than he would when parked on a deserted, dead-end street at 4:00 a.m." *Garcia-Cantu*, 253 S.W.3d at 245 n.42. Likewise, the trial court found that "any reasonable person in Nelson's position, alone on a dark street faced with a marked patrol unit and a command directed at him, would feel he had no choice but to yield to the officer and, therefore, was not free to leave." Viewing the totality of the circumstances set forth by the trial court's findings of fact in the light most favorable to the trial court's ruling, and giving Nelson as the prevailing party the strongest legitimate view of the evidence, we agree with the trial court and conclude that Officer Saldana seized Nelson within the meaning of the Fourth Amendment at the beginning of the encounter. *See Crain*, 315 S.W.3d at 52; *Garcia-Cantu*, 253 S.W.3d at 245 n.42. We overrule the State's first issue.

## C. Community Caretaking Stop

By its second issue, the State argues that even if Officer Saldana seized Nelson at the beginning of the encounter, the seizure was justified as a valid community caretaking stop.

### 1. Applicable Law

"Because a police officer's duties involve activities other than gathering evidence, enforcing the law, or investigating crime, the Supreme Court has characterized a police officer's job as encompassing a community caretaking function." *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). As part of this function, an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of

help." *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (quoting *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999)). However, the community caretaking function is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 444. "A police officer may not properly invoke his community caretaking function if he was motivated by a non-community caretaking purpose." *Gonzales*, 369 S.W.3d at 854 (citing *Corbin*, 85 S.W.3d at 277). Furthermore, the doctrine is narrowly applicable to stops and searches of vehicles, and "[o]nly in the most unusual circumstances will warrantless searches of private, fixed property, or stops of persons located thereon, be justified under the community caretaking function." *Wright*, 7 S.W.3d at 152.

Determination of whether an officer properly invoked this exception involves a two-step inquiry. We ask: "(1) whether the officer was primarily motivated by a community-caretaking purpose; and (2) whether the officer's belief that the individual needs help was reasonable." *Gonzales*, 369 S.W.3d at 854–55. The first question, whether an officer was primarily motivated by a community caretaking purpose at the time that he initiated the encounter, is a mixed question of law and fact that turns on the trial court's determination of the credibility of the witnesses. *See Corbin*, 85 S.W.3d at 277; *State v. Woodard*, 314 S.W.3d 86, 92 (Tex. App.—Fort Worth 2010), *aff'd on other grounds*, 341 S.W.3d 404 (Tex. Crim. App. 2011). Accordingly, we will defer to the trial court's ruling as long as the record supports it. *See Castleberry*, 332 S.W.3d at 465–66. The inquiry under the second prong, whether an officer reasonably believed that a person was in need of help, "is an objective one focusing on what the officer observed" and reasonable inferences that the officer drew from those observations. *Gonzales*, 369 S.W.3d at 856.

14

## 2. Analysis

The State argues that even if Officer Saldana did seize Nelson, Officer Saldana could have reasonably believed that Nelson needed help because Nelson was standing still on the bridge for an unusually long period of time and because of "[Nelson's] aggressive and incoherent speech" once Officer Saldana began the interaction. As a preliminary matter, we note that Officer Saldana testified that Nelson's "aggressive and incoherent speech" occurred after the point in time in which we have already determined that Officer Saldana effectuated a detention. Furthermore, the trial court found credible Nelson's testimony that he was walking on the bridge and rejected Officer Saldana's testimony that Nelson was standing still for a prolonged period of time. We are bound by that determination. *Castleberry*, 332 S.W.3d at 465–66. In its supplemental findings, the trial court found that Officer Saldana's "justification for exercising his community-caretaking authority with Nelson was not credible." Because the record reflects evidence that Nelson was not showing any signs of distress, we conclude that the trial court, acting as factfinder and exclusive judge of the credibility of the testimony of the witnesses, had a sufficient evidentiary basis to find that Officer Saldana was not primarily motivated by a community caretaking purpose. *See Woodard*, 314 S.W.3d at 92 (deferring to the trial court's finding of fact that the defendant was not in distress because it was supported by the record, and concluding that the officer therefore could not have been primarily motivated by a community caretaking purpose). Accordingly, we overrule the State's second issue.

### D. Incomplete Seizure

By its third issue, the State argues that even if Officer Saldana did attempt to seize

Nelson, the seizure was incomplete because Nelson failed to submit to Officer Saldana's show of physical force. The general rule is that "when a suspect refuses to yield to physical force . . . there is no seizure." *Castleberry*, 332 S.W.3d at 469 (citing *Hodari D*, 499 U.S. at 626, 629). The State argues that even if Nelson was seized from the outset of the encounter, the seizure was not complete because Nelson "fought back against being handcuffed and restrained." However, we have already concluded that Officer Saldana detained Nelson by making a show of authority by calling him over to Officer Saldana's vehicle and that Nelson submitted by complying, thus making the seizure complete before Officer Saldana even attempted to place physical restraints on Nelson. *See Crain*, 315 S.W.3d at 49 (observing that a seizure is complete when an officer makes a show of authority and the citizen submits to it). Furthermore, the record supports the trial court's finding that Nelson was detained by Officer Saldana's show of authority and that Officer Saldana only "continued the detention" by physically restraining him. Accordingly, we overrule the State's third issue.

### E. Attenuation of Taint and Subsequent Criminal Acts

The State asserts by its fourth issue that the trial court erred in suppressing evidence of the charged crimes because both were independent crimes that are not subject to suppression under the exclusionary rule. *See State v. Iduarte*, 268 S.W.3d 544, 551–52 (Tex. Crim. App. 2008) (holding that the act of pointing a gun at an officer after the officer illegally entered the appellant's house was an independent crime that was not subject to suppression). Nelson responds that the State waived this argument by failing to make it at the suppression hearing.

The court of criminal appeals has held that "in cases in which the State is the party

16

appealing, the basic principle of appellate jurisprudence that points not argued at trial are deemed to be waived applies equally to the State and the defense." *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (per curiam); *see State v. Rhinehart*, 333 S.W.3d 154, 162 (Tex. Crim. App. 2011) (observing that when the State is the appellant, "ordinary rules of procedural default" prevent the State from making an argument that it did not raise in the trial court even if it is an issue on which the defendant has the initial burden of production). The reason for this is the familiar rule that appellate courts may consider "alternative theories of law applicable to the facts of the case which *support* the trial court's decision," but we may not "reverse a trial court's decision on new theories of law not previously presented to the trial court for its consideration." *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013) (quoting *Mercado*, 972 S.W.2d at 77).

The State contends that it may nevertheless argue for the first time on appeal that the evidence of the charged offenses are not subject to suppression because it was Nelson's burden to prove a causal connection between the alleged violation of his rights and the evidence that he sought to suppress. *See Pham v. State*, 175 S.W.3d 767, 774 (Tex. Crim. App. 2005) (holding that the burden is on the party moving for suppression to show a causal connection between the violation of his rights and the evidence to be seized, and distinguishing that analysis from an attenuation-of-taint analysis). The State points out that it is allowed to argue on appeal that a defendant did not have standing to bring a suppression motion because standing is a "primary element" of a motion to suppress. *See State v. Klima*, 934 S.W.2d 109, 111 (Tex. Crim. App. 1996) (en banc). The State reasons that the causal connection between the alleged violation of a defendant's rights and the evidence that he seeks to suppress is an equally important

"primary element" of a Fourth Amendment claim, and therefore, the State should be allowed to raise the issue of whether Nelson carried his burden for the first time on appeal. However, the *Mercado* Court observed that the cases permitting the State to raise the issue of standing for the first time on appeal whether or not it is the appellant "are limited to the issue of standing," *Mercado*, 972 S.W.2d at 78, and the court of criminal appeals has not subsequently deviated from the rule that "ordinary rules of procedural default" apply to the State when it is the party appealing. *Rhinehart*, 333 S.W.3d at 162.[6] In *Rhinehart*, for example, a majority of the court expressly stated that it disagreed "with the broad assertion in the . . . dissenting opinion 'that the State need not preserve a complaint if the issue is one which the defendant had the burden to prove in order to obtain relief'" in cases where the State is the appellant. *Id.* at 161–62. The court very recently reaffirmed that "*Mercado* served to clarify that ordinary notions of procedural default apply equally to all appellants, regardless of whether the appellant in a particular case is the State or the defendant." *Alford*, 400 S.W.3d at 929. Accordingly, because the State did not present the argument in its fourth issue to the trial court, and does not present any authority that it may make this argument for the first time on appeal, we hold that the State has waived it. *See id.*; *Rhinehart*, 333 S.W.3d at 161–62; *see also State v. Steelman*, 93 S.W.3d 102, 106–07 (Tex. Crim. App. 2002) (following *Mercado* and holding that the State could not argue for the first time on appeal that the search was actually conducted

---

[6] The *Rhinehart* court also noted that the cases permitting the State to raise the issue of standing for the first time on appeal "primarily relied" on the United States Supreme Court's decision in *Rakas v. Illinois*, 439 U.S. 128 (1979) and not on Texas case law; additionally, "the prosecution in *Rakas* did raise the standing issue in the trial court." *State v. Rhinehart*, 333 S.W.3d 154, 161 (Tex. Crim. App. 2011). And, in any event, in *Kothe,* the court of criminal appeals observed that appellate courts have the option to consider the issue of standing either on their own motion or on the State's, but may also hold that the State has forfeited the issue by failing to raise it in the trial court. *Kothe v. State*, 152 S.W.3d 54, 60 & n.15 (Tex. Crim. App. 2004).

pursuant to a warrant when it did not make that argument in the trial court even though it was the defendant's initial burden to prove that the seizure was warrantless). We overrule the State's fourth issue.

## III. CONCLUSION

We affirm the order of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
13th day of February, 2014.