

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. PD-0510-25

### THE STATE OF TEXAS

**v.**

### GRADY JACK BARBER, Appellee

### ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW FROM THE NINTH COURT OF APPEALS LIBERTY COUNTY

PARKER, J., delivered the opinion of the Court in which YEARY, NEWELL, WALKER, MCCLURE, and FINLEY, JJ., joined. YEARY, J., filed a concurring opinion. FINLEY, J., filed a concurring opinion. SCHENCK, P.J., filed a dissenting opinion in which RICHARDSON, J., joined and KEEL, J., joined as to part IIB.

### OPINION

Certain statutes authorizing warrantless arrests require that an offense be committed within the arresting person's "presence" or "view." Does a DWI or intoxication-manslaughter offense occur in the officer's "presence or view" if the

officer arrives 40 minutes after the defendant has crashed and is no longer operating his vehicle? Does a public intoxication offense occur in the officer's presence or view if, when the officer arrives, the defendant is no longer at a place in which he poses a danger to himself or others due to his intoxication? The obvious answer to these two questions is "no," but the court of appeals said "yes."[1] The court of appeals based its holding on this Court's prior decision in *State v. Woodard* and construed that decision to hold that an offense need not occur in the officer's presence or view to satisfy the "presence or view" requirement.[2] We now conclude that, to the extent *Woodard* construed the "presence or view" requirement, the decision was obviously wrong, and we now disavow it. Consequently, we reverse the judgment of the court of appeals and remand for further proceedings.

## I. BACKGROUND

### A. Trial

A witness saw Appellee consume two alcoholic beverages at a bar in Liberty County. The witness also saw Appellee drive off and strike another vehicle (on a

---

[1] *State v. Barber*, No. 09-24-00313-CR, 2025 WL 1749999, *5 (Tex. App.—Beaumont June 25, 2025) (not designated for publication).

[2] *Id.*; *see also State v. Woodard*, 341 S.W.3d 404, 414 (Tex. Crim. App. 2011).

Liberty County highway). The driver of the other vehicle died from the crash. After the crash, Appellee was transported by ambulance to a hospital in Harris County. A Dayton (Liberty County) police officer, E.L. Ibarra, arrived at the scene 40 minutes after the crash and interviewed the witness who saw Appellee consume alcohol and drive. Officer Ibarra performed no field sobriety tests due to Appellee being transported to the hospital.[3]

Officer Ibarra alleged all of these facts (except the hospital's location) in a probable-cause affidavit for a search warrant to test Appellee's blood for alcohol. The officer marked a checkbox next to the language, "Observed, indicated impaired driver," but he struck through the word "observed" and wrote his initials. A Liberty County judge issued a warrant. The warrant was executed at the hospital (in *Harris* County), and a sample of Appellee's blood was drawn and tested.

Appellee was indicted for intoxication manslaughter. He filed a motion to suppress the test results. The parties called no witnesses at the suppression hearing. Instead, they submitted documentary evidence, including the probable-cause affidavit, and a written stipulation of facts.

---

[3] The record is silent on whether Appellee was even at the scene when the officer arrived.

At the time of the warrant, Article 18.067 provided that a warrant for blood testing may be executed in any county adjacent to the county in which the warrant issued *and* by "any law enforcement officer authorized to make an arrest in the county of execution."[4] Appellee argued that the Liberty County police officer was *not* authorized to make an arrest in *Harris* County—where the warrant was executed—because Article 14.03(d) permits an out-of-county police officer to make such an arrest only for certain offenses committed "within the officer's presence or view."[5] Consequently, Appellee argued, the execution of the warrant was invalid. We pause to observe that the issue wasn't whether Appellee was validly arrested; the issue was whether the search warrant was validly executed. But a portion of Article 18.067 tied the validity of a search warrant's execution to whether the officer had the (hypothetical) authority to arrest the defendant, whether or not such an arrest took place. After hearing arguments, the trial court took the case under advisement.

The trial court made written findings, which included:

---

[4] *See* TEX. CODE CRIM. PROC. art. 18.067 (West 2022). The second part of the statute has since been removed by amendment. *See id.* art. 18.067 (West 2024).

[5] *See id.* art. 14.03(d) ("A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace.").

7. [P]robable cause was shown for the issuance of the blood search warrant.

* * *

13. Officer lbarra arrived on the scene of the motor vehicle crash after it had occurred.

14. [T]he motor vehicle crash did not occur within Officer lbarra's physical presence or view.

15. Officer Ibarra did not observe the Defendant prior to or at the time of the motor vehicle crash.

The trial court ultimately granted the motion to suppress.

## B. Appeal

On appeal, the State contended that Article 14.03(d) gave the Liberty County police officer the authority to arrest Appellee in Harris County for intoxication manslaughter. The court of appeals agreed.[6] Relying upon *Woodard*, the court of appeals held that Article 14.03(d) did not require the police officer to see the offense or even be in the vicinity when the offense was committed:

The fact that Ibarra did not see Barber commit the offense does not determine whether Ibarra could arrest Barber without a warrant for an offense committed "in his presence or in his view," because Ibarra could consider all the information he knew before the arrest to determine whether there was sufficient information for him to believe

---

[6] *Barber*, 2025 WL 1749999, at *4-5.

Barber committed the offense.[7]

The court of appeals concluded that Ibarra "had the authority to arrest Barber without a warrant in Harris County for committing an offense in violation of Chapter 49 within Ibarra's presence or view."[8] Sustaining the State's issue, the court of appeals reversed the trial court's suppression order and remanded the case for further proceedings.[9]

---

[7] *Id.* at *5. The court of appeals also said that Officer Ibarra stated in the probable-cause affidavit that Appellee "indicated signs of impaired driving." *Id.* at *1. But as explained earlier, the officer struck through the word "observed," indicating that he did not in fact observe any impaired driving but was inferring impairment from information he obtained from a witness. And in line with the State's arguments before it, the court of appeals said, "Ibarra also relied on his personal observations of Barber at the hospital," *id.* at *4-5, but nothing in the record explicitly substantiates the assertion that Ibarra observed Appellee at the hospital.

[8] *Id.* at *5.

[9] *Id.* We granted review of the following issue:

Is an officer authorized to make an arrest for an alleged offense as "within his presence or view" when he has probable cause to arrest due to his post-incident investigation, even though the alleged offense occurred neither in his actual presence nor in his actual view?

The dissent seeks to address other issues, and it claims that we avoid answering the issue in the case, but, in fact, we resolve the only issue upon which discretionary review was granted.

The dissent claims that we misconstrue former Art. 18.067 to conjunctively impose the "adjacent county" and "authorized officer" requirements instead of permitting *either* to be satisfied. But in fact, we do not construe former Art. 18.067 at all. The trial court, the parties (at least on appeal and discretionary review), and the court of appeals have all read the statute to impose these requirements conjunctively, and it seems entirely possible that they hadn't even conceived of a disjunctive reading. *See e.g.*, State's brief to the court of appeals at vii-viii ("Thus, in compliance with the plain language of Article 18.067, in the case at hand the warrant for a blood specimen in an intoxication offense was issued from an adjacent county and executed by an officer with the authority to make an arrest in the executing county."); *Barber*, 2025 WL

1749999, at *4 ("We agree that an officer with the Dayton Police Department, who is not authorized to make an arrest in Harris County, needs the assistance of an officer with jurisdiction in Harris County to execute a search warrant to seize a blood specimen."). Alternatively, the dissent contends that we should hold that Art. 38.23 is unavailable as an enforcement mechanism for violations of Art. 18.067 or that the good faith exception in Art. 38.23 applies. But the court of appeals did not address either of these Art. 38.23 issues and, instead, found no law violation to trigger Article 38.23—due to its construction of the words "presence" and "view" in Art. 14.03(d). Further, the State did not raise any of the dissent's issues to this Court in a petition or briefing, and those issues can be addressed by the court of appeals on remand, if they are properly before that court. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (Error-preservation rules apply to the State when it is the appellant.).

The dissent also says that we should address the good-faith issue because our disavowing of *Woodard* has made its resolution clear, but while the State prosecuting attorney, as *amicus*, has raised the good faith issue, it seeks only a remand for the court of appeals to address it, and Appellee, in response, advances an argument against the good-faith exception that purports not to turn on the viability of *Woodard* (arguing that the good faith exception turns on reliance on a warrant and "does not protect reliance on a mistaken reading of the statutes that define an officer's jurisdiction"). Assuming there is no preservation obstacle to asserting the good faith issue, we nevertheless find it appropriate to adhere to our usual practice of leaving issues not previously addressed by the court of appeals to the court of appeals on remand, especially when the unaddressed issue has not been raised in a petition for discretionary review. *See Osorio-Lopez v. State*, 663 S.W.3d 750, 757 (Tex. Crim. App. 2022) ("[T]his Court reviews only decisions of the courts of appeal unless 'the proper resolution of the remaining issue is clear.'") (brackets inserted); *McClintock v. State*, 444 S.W.3d 15, 21 (Tex. Crim. App. 2014) ("The parties make a number of substantial arguments in support of their respective positions in this Court, and our resolution of the issue (if any should even be necessary after a remand) would benefit from a carefully wrought decision from the court of appeals."); *cf. Contreras v. State*, 312 S.W.3d 566, 574 n.17 (Tex. Crim. App. 2010) (declining to address issues raised in a brief because they were not raised in the petition for discretionary review); *Whatley v. State*, 946 S.W.2d 73, 76 n.6 (Tex. Crim. App. 1997) (finding it inappropriate to address an issue that was neither addressed by the court of appeals nor raised in a petition to this Court).

Ultimately, the dissent's approach seems to be "appeal de novo"—similar to a "trial de novo" that sometimes occurs in an appeal from a low-level trial court or an administrative agency to a higher level trial court (such as an appeal from a justice court to a statutory county court). *See In re A.L.M.-F.*, 593 S.W.3d 271, 277-79 (Tex. 2019) (setting out examples of "trial de novo" situations). "A 'trial de novo' is a new and independent action in the reviewing court with 'all the attributes of an original action' as if no trial of any kind has occurred in the court below." *Id.* at 277. It is essentially a "redo" of the trial. Similarly, the dissent wishes to "start over" and "redo" this appeal. But that is not how a discretionary-review court operates, which only sparingly and in unusual circumstances addresses issues that have neither been raised in a petition nor addressed by the court of appeals. *See Osorio-Lopez*, 663 S.W.3d at 757; *Davison v.*

## II. ANALYSIS

## A. "Presence or View"

Article 14.03(d), a key statute upon which the court of appeals relied, provides that a warrantless arrest can be made for certain offenses committed within an officer's "presence or view":

> A peace officer who is outside his jurisdiction may arrest, without warrant, a person *who commits an offense within the officer's presence or view*, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace.[10]

At least five other provisions contain similar language:

- Article 14.01(a):

> A peace officer or any other person, may, without a warrant, arrest an offender *when the offense is committed in his presence or within his view*, if the offense is one classed as a felony or as an offense against the public peace.

- Article 14.01(b):

> A peace officer may arrest an offender without a warrant *for any offense*

---

*State*, 405 S.W.3d 682, 691-92 (Tex. Crim. App. 2013) (saying that we "ordinarily" do not address issues not addressed by the court of appeals but that there are "exceptions" to that practice); *Ex parte Doster*, 303 S.W.3d 720, 721 & n.2 (Tex. Crim. App. 2010) (noting that a "threshold" issue—such as pretrial habeas cognizability—can be granted on the Court's own motion even though it was neither raised by the parties nor addressed by the court of appeals).

[10] TEX. CODE CRIM. PROC. art. 14.03(d) (emphasis added).

*committed in his presence or within his view.*

- Article 14.03(b):

A peace officer shall arrest, without a warrant, a person the peace officer has probable cause to believe has committed an offense under Section 25.07, Penal Code, *if the offense is committed in the presence of the peace officer.*

- Article 14.03(g)(1):

A peace officer described by Article 2A.001(1), (2), or (5), who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person *who commits any offense within the officer's presence or view*, other than a violation of Subtitle C, Title 7, Transportation Code.

- Article 14.03(g)(2):

A peace officer described by Article 2A.001(3), who is licensed under Chapter 1701, Occupations Code, and is outside of the officer's jurisdiction may arrest without a warrant a person *who commits any offense within the officer's presence or view*, except that an officer described in this subdivision who is outside of that officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the offense is committed in the county or counties in which the municipality employing the peace officer is located.[11]

Another statute allows an officer to arrest for an offense committed in a magistrate's presence or view:

A peace officer may arrest, without warrant, when a felony or breach

---

[11] *Id.* arts. 14.01(a), (b); 14.03(b), (g) (emphasis added).

of the peace has been committed *in the presence or within the view of a magistrate*, and such magistrate verbally orders the arrest of the offender.[12]

Other warrantless arrest provisions do not contain a "presence or view" requirement.[13] And two provisions explicitly *negate* a "presence or view" requirement:

> Any peace officer may arrest, without warrant:
>
> * * *
>
> (3) persons who the peace officer has probable cause to believe have committed an offense defined by Section 25.07, Penal Code, *if the offense is not committed in the presence of the peace officer*;
>
> * * *
>
> (5) persons who the peace officer has probable cause to believe have prevented or interfered with an individual's ability to place a telephone call in an emergency, as defined by Section 42.062(d), Penal Code, *if the offense is not committed in the presence of the peace officer*.[14]

One of these provisions that negates a "presence or view" requirement is a counterpart to a provision that makes arrest mandatory if "presence or view" is satisfied—that is, for certain offenses, an officer *may* arrest if the offense is not committed in presence or view but *shall* arrest if the offense is committed within

---

[12] *Id.* art. 14.02 (emphasis added).

[13] *Id.* arts. 14.03(a)(1), (2), (4), (6), (7), 14.04.

[14] *Id.* art. 14.03(a)(3), (5) (emphasis added).

presence or view.[15] Most "presence or view" provisions, however, permit an arrest but do not require one.[16]

## B. Plain Meaning

So, it is rather important to correctly construe what this "presence or view" language means. The standard for construing a statute is set out in our seminal case of *Boykin v. State*: courts must give effect to the plain meaning of its text, unless the text is ambiguous or the plain meaning leads to absurd results that the Legislature could not have possibly intended.[17] The Legislature is constitutionally entitled to have us faithfully construe the text of a statute.[18] And in conducting a plain-meaning analysis, we presume that "every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible."[19]

---

[15] *Compare id.* art. 14.03(a)(3) (arrest permitted if not in presence or view) *to id.* art. 14.03(b) (arrest required if in presence or view).

[16] *Id.* arts. 14.01(a), (b); 14.03(d), (g).

[17] *Milton v. State*, 721 S.W.3d 300, 303 (Tex. Crim. App. 2025); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[18] *See Milton*, *supra* at 306 (quoting from *Boykin*, *supra* ("[T]he Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted.")) (brackets inserted).

[19] *Ex parte Bodden*, 707 S.W.3d 399, 405 (Tex. Crim. App. 2025); *see also Milton*, *supra* at 303 ("Plain meaning is determined by reading the statute in context, reasonably giving effect to

Adding to our general presumption that each word has meaning is the fact that a "presence or view" requirement (or some facsimile) exists in some arrest statutes, is absent from other arrest statutes, and is expressly negated in a couple of arrest statutes. Given this distribution, it stands to reason that the Legislature specifically intended the "presence or view" language to add meaning beyond the standard probable-cause requirement (that a crime was committed in the past) that many of the Texas arrest statutes contain.[20] And whatever else the "presence or view" language might mean, it plainly appears to exclude an officer who did not perceive the offense through one of his five senses and did not arrive at the scene until after the offense was complete and no longer being committed. This plain reading comports with caselaw decided before *Woodard* that holds, "An offense is

---

each word, phrase, clause, and sentence, and construing the text according to applicable rules of grammar and common usage.").

[20] *See* TEX. CODE CRIM. PROC. arts. 14.03(a)(1) ("found in suspicious places and under circumstances which reasonably show that such persons have been guilty of . . ." certain types of offenses), (a)(2) ("probable cause to believe have committed an assault resulting in bodily injury to another person and . . . probable cause to believe that there is danger of further bodily injury to that person"), (a)(3) ("probable cause to believe have committed an offense defined by Section 25.07"), (a)(4) ("probable cause to believe have committed an offense involving family violence"), (a)(5) ("probable cause to believe have prevented or interfered with an individual's ability to place a telephone call in an emergency"), (a)(6) ("probable cause to believe that the person has committed a felony"), (a)(7) ("probable cause to believe has committed a felony offense while civilly committed as a sexually violent predator"), (b) ("probable cause to believe has committed an offense under Section 25.07"); 14.04 ("upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape").

deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence."[21]

In the present case, the officer did not see the accident and was not present when it occurred (arriving 40 minutes later). And while the crime of DWI could be a sufficient offense to justify arrest under Article 14.03(d), and an officer could view such a crime if he merely saw a conscious but intoxicated defendant in the vehicle with the engine running,[22] we cannot conclude that Officer Ibarra saw or was present during a DWI. There is in fact no evidence in this record that Appellee was even at the scene when the officer arrived, much less that he was in his vehicle with the engine running. All we know from the record is that the officer talked to a witness who saw Appellee drink, drive, and collide. And we know that Appellee was taken to the hospital, though we do not know how the officer knew that. For the same reason, we cannot conclude that Officer Ibarra saw the crime of public intoxication, which requires that the defendant "appear[] in a public place

---

[21] *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

[22] *See State v. Espinosa*, 666 S.W.3d 659, 667-68 (Tex. Crim. App. 2023) ("A person is guilty of DWI if he operates a motor vehicle in a public place while intoxicated. To determine if a person operated a motor vehicle, the totality of the circumstances must demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use.") (citing *Denton v. State*, 911 S.W.2d 388 (Tex. Crim. App. 1995); citations and internal quotation marks omitted).

while intoxicated to the degree that the person may endanger the person or another."[23] Nothing in the record suggests whether the officer ever saw Appellee, and if he did, what the circumstances were. And even if we inferred, as the State wishes us to do,[24] that the officer saw Appellee in the hospital, the trial court would be well within its discretion on this record to decide that Appellee no longer posed a danger to himself or others at the hospital.

In its briefing, the State contended that Officer Ibarra could take advantage of the "collective knowledge" doctrine to find that the offense was committed in his presence or view. This doctrine allows the knowledge of other law-enforcement officers to be imputed to the officer who makes the arrest, at least as long as there is some degree of cooperation between them.[25] We have indicated that the doctrine applies to a statutory warrantless-arrest provision that incorporates the "presence or view" requirement.[26] But there is no evidence in

---

[23] *See* TEX. PENAL CODE § 49.02(a).

[24] *See infra*, discussing a contention made by the State at oral argument.

[25] *See State v. Martinez*, 569 S.W.3d 621, 627 (Tex. Crim. App. 2019).

[26] *See id.* at 625, 627, 630 (noting trial court's reliance on Article 14.01(b) [which contained a presence-or-view requirement], holding "Under the facts of this case, the sum of the information known to the cooperating officers—their cumulative information—should be considered in assessing probable cause," concluding that "the sum total of the knowledge of Officers Guerrero, Ramirez, and Quinn amounted to probable cause" that the defendant committed public intoxication, and concluding that "Appellee's motion to suppress should have

this case that any other law-enforcement officer witnessed events that could be construed as the commission of a crime within that officer's presence or view.

To the extent the State might be implying that Officer Ibarra could rely upon *non-law-enforcement civilians* as part of a "collective knowledge," we have never extended the "collective knowledge" doctrine that far, and we decline to do so under the facts before us. At least where, as here, the statute in question requires that the offense occur in the *officer's* presence or view, the statutory language cannot support the idea that a non-officer's observance of a crime can be imputed to an officer to satisfy that requirement.[27] And we point out that such an extension of the "collective knowledge" doctrine would be quite expansive and would ultimately seem to depart from the theoretical underpinnings of the doctrine—that we can treat cooperating law enforcement as a collective unit when it comes to justifying an individual officer's acts.[28]

In oral argument, the State contended that the DWI or intoxication-

---

been denied.").

[27] *Cf.* TEX. CODE CRIM. PROC. art. 14.01(a) (permitting a warrantless arrest by a "peace officer or any other person" for certain types of offenses committed within his presence or view).

[28] *See Martinez*, 569 S.W.3d at 626 (quoting *Illinois v. Andreas*, 463 U.S. 765, 771-72 n.5 (1983) ("[W]here law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.")) (ellipsis in *Martinez*, brackets inserted).

manslaughter offense continued to occur while the officer observed Appellee's

intoxication at the hospital. But the record does not substantiate the State's

assertion about what the officer observed—neither the stipulation nor the

documentary evidence actually says that the officer observed Appellee at the

hospital. Even if it did, a defendant's continued intoxication does not cause the

offenses of DWI and intoxication manslaughter to continue after the defendant's

impermissible conduct during intoxication has ceased.[29]

---

[29] *See* TEX. PENAL CODE §§ 49.04(a) ("A person commits an offense if the person is intoxicated *while operating a motor vehicle* in a public place.") (emphasis added), 49.08 ("A person commits an offense if the person: (1) operates a motor vehicle in a public place . . . and (2) is intoxicated and by reason of that intoxication causes the death of another by accident or mistake.") (ellipsis inserted); *Barnes v. State*, 824 S.W.2d 560, 562 (Tex. Crim. App. 1991), *overruled on other grounds by Proctor v. State*, 967 S.W.2d 840 (Tex. Crim. App. 1998) (quoting from *Toussie v. United States*, 397 U.S. 112, 115 (1970)) ("Generally, when each of the elements of a crime have occurred, the crime is complete. . . . '[T]he doctrine of continuing offenses should be applied in only limited circumstances. . . . [S]uch a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion or the nature of the crime is such that Congress must assuredly have intended that it be treated as continuing.'") (first ellipsis inserted, second ellipsis in *Barnes,* brackets inserted); *cf. Howlett v. State*, 994 S.W.2d 663, 665, 667 (Tex. Crim. App. 1999) ("[W]e cannot say the Court of Appeal's holding that 'the offense continued to occur as long as the unauthorized valve was in place and the owner suffered pecuniary loss' [from the continued diversion of gas] was clearly erroneous.") (brackets inserted and bracketed material added for clarity); *Spakes v. State*, 913 S.W.2d 597, 598 n.* (Tex. Crim. App. 1996) (citing *Lawhorn v. State*, 898 S.W.2d 886, 890 (Tex. Crim. App. 1995) (concluding that escape is not a continuing offense but is complete at the time of the defendant's "initial departure from custody" so that circumstances arising later cannot negate a necessity defense); *Barnes, supra* ("[W]e have never construed that section as an invitation to turn theft into a continuing offense and we decline to do so now. To do so would be to usurp the authority of the legislature in an area controlled exclusively by it. The explicit language of the statute does not compel such a conclusion and the nature of theft is not such that the legislature must have intended it to be treated as continuing.") (brackets inserted).

And since the trial court granted the motion to suppress and made fact findings in the defendant's favor (except for finding probable cause that a crime had been committed in the past), we must view the evidence in the light most favorable to the defendant with regard to whether the officer had any proximity to the defendant that could be construed as being present during an offense.[30] Given the state of the evidence and especially in light of the standard of review, one cannot find that Appellee "committed an offense within the officer's presence or view" under the plain meaning of those words.

The State also suggested in oral argument that police officers would often be without the ability to arrest for intoxication offenses if the words "presence" and "view" are interpreted literally. But as we have explained earlier, several statutes that confer the ability to arrest without a warrant do not contain a "presence or view" requirement—but have other requirements—and at least a couple of those could apply to intoxication offenses in some circumstances.[31] Or an officer could obtain an arrest warrant. And for an out-of-geographic-jurisdiction officer, as in

---

[30] *See Sandoval v. State*, 665 S.W.3d 496, 515 (Tex. Crim. App. 2022) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)) (Appellate court must accord deference to the trial court's resolution of questions of historical fact and application-of-law-to-fact questions that turn on credibility and demeanor.); *State v. Lujan*, 634 S.W.3d 862, 865 (Tex. Crim. App. 2021) (Evidence must be viewed in the light most favorable to the trial court's ruling and findings.).

[31] *See* TEX. CODE CRIM. PROC. arts. 14.03(a), 14.04.

the present case, the officer could obtain the assistance of a local officer. Thus, to the extent the State might be advancing an "absurd results" argument, we find such an argument to lack merit.

## C. *Woodard*

In *Woodard*, the defendant drove his vehicle into a ditch and walked away.[32] A tipster notified the police of someone matching the defendant's description walking away from the scene and where he was last spotted.[33] A police officer found the defendant six to eight blocks from the accident.[34] The defendant admitted that he was drunk and should not have been driving.[35] The officer smelled alcohol on the defendant's body and breath, the defendant's eyes were bloodshot and glazed, and the defendant was unsteady on his feet and staggered when he walked.[36] The officer conducted field sobriety tests, which the defendant failed.[37] The officer asked the defendant if he would be willing to take a breath test,

---

[32] 341 S.W.3d at 407.

[33] *Id.*

[34] *Id.*

[35] *Id.* at 408.

[36] *Id.*

[37] *Id.*

and he said he would.[38]  The defendant was then arrested.[39]

The trial court concluded that the initial interaction between the officer and the defendant was not a consensual encounter and that the defendant was detained without reasonable suspicion.[40]  The trial court also concluded that no officer observed the defendant operating a motor vehicle while intoxicated and that the arresting officer did not have probable cause to arrest the defendant for public intoxication.[41]

The court of appeals reversed, concluding that the initial interaction between the officer and the defendant was a consensual encounter, the officer had reasonable suspicion to conduct field sobriety tests, and after those tests the officer had probable cause to arrest.[42]  With respect to Article 14.01(b), this Court summarized the court of appeals's decision as "reject[ing] Woodard's argument that his arrest for DWI was unlawful because Officer Warner did not actually

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 408-09.

[41] *Id.* at 409.

[42] *Id.* at 409-10.

witness Woodard driving while intoxicated as required by" Article 14.01(b).[43] In

fact, quoting one of its earlier decisions, the court of appeals essentially wrote the

words "presence or view" out of the statute:

> [A]lthough the statute states that the offense must be one that is committed within the officer's presence or view, an officer can make a warrantless arrest based on an offense that was committed at an earlier time and further, the officer does not even have to personally see the offense committed before the warrantless arrest is justified under article 14.01(b).[44]

A dissenting justice contended that the court-of-appeals majority made mistakes in

deciding that the encounter began as consensual, and the dissent concluded that

the arrest was illegal under Article 14.01(b) because the defendant had not

committed a DWI offense in the officer's presence.[45] The dissent argued that

public intoxication could not be considered as an offense forming a basis for arrest

because the State had procedurally defaulted that argument.[46]

    Echoing the arguments of the dissent, the defendant petitioned for

---

[43] *Id.* at 409.

[44] *State v. Woodard*, 314 S.W.3d 86, 98 (Tex. App.—Fort Worth (quoting *Akins v. State*, 202 S.W.3d 879, 889 (Tex. App.—Fort Worth 2006, pet. ref'd)) (brackets inserted).

[45] *Woodard*, 341 S.W.3d at 410 (citing *Woodard*, 314 S.W.3d at 100-03 (Dauphinot, J., dissenting)).

[46] *Id.*

discretionary review.[47]  This Court affirmed.[48]  In doing so, the Court found that

the initial interaction between the officer and the defendant was a consensual

encounter,[49] that the officer had developed at least reasonable suspicion for a

detention by the time he administered field sobriety tests,[50] and that the

information obtained before and during the field sobriety tests provided probable

cause to believe that the defendant "had driven the now-wrecked car while

intoxicated."[51]  In a general-law section of the opinion regarding Article 14.01(b),

the Court relied *solely* on our prior decisions in *Beverly* and *Steelman* for the

proposition that "all of the information to support probable cause does not have to

be within the officer's personal knowledge" and that the officer can rely upon

"reasonably trustworthy information."[52]  In its analysis section, the Court

concluded, after finding probable cause that a DWI offense had been committed,

---

[47]  *Id.*

[48]  *Id.* at 412.

[49]  *Id.* at 412-13.

[50]  *Id.* at 414.

[51]  *Id.*

[52]  *Id.* at 412 (citing and quoting *Beverly v. State*, 792 S.W.2d 103, 105 (Tex. Crim. App. 1990) and *Steelman*, 93 S.W.3d at 107).

that "Article 14.01(b) was not violated."[53] The Court further found that the court of appeals did not resolve the case on the issue of public intoxication, having validly found that the arrest was supported by probable cause to conclude that the defendant had committed the offense of DWI.[54] The Court said nothing in its analysis section about Article 14.01(b)'s "presence or view" requirement.[55]

In a one-paragraph dissent, Presiding Judge Keller said it was "undisputed that the arrest was without a warrant and that a DWI was not committed in the presence or view of any police officer, since appellant was first spotted walking six to eight blocks from the accident."[56] She therefore disagreed with the Court's holding that Article 14.01(b) was not violated.[57]

## D. Disavowing *Woodard*

Some of *Woodard*'s holdings were correct. *Woodard* correctly found that the interaction between the officer and the defendant began as a consensual encounter. The Court also correctly found that the defendant's physical demeanor and

---

[53] *Id.* at 414.

[54] *Id.*

[55] *See id.* at 412-14.

[56] *Id.* at 415 (Keller, P.J., dissenting).

[57] *Id.*

admissions during that consensual encounter gave the officer reasonable suspicion to require the defendant to perform field sobriety tests. So, to the extent the trial court suppressed evidence about the *field sobriety tests*, it erred, and the Court was correct to affirm the overturning of that ruling.

But the *breath testing* was another matter. That testing happened after arrest, and unless the defendant's pre-arrest consent attenuated the taint (an issue that was not addressed), a valid basis for arrest would be needed. The Court was correct to conclude that, after the defendant failed the field-sobriety tests, the officer had probable cause to believe that the defendant had committed a DWI in the past. But Article 14.01(b) required more: that the offense be committed in the officer's "presence" or "view." Looking back at the facts of *Woodard*, it seems likely that the offense of *public intoxication* was committed in the officer's presence or view when the officer saw the defendant walking on the street six to eight blocks from the accident. However, since the State has to preserve error when it is an appealing party,[58] reliance on public intoxication as a basis for arrest might conceivably have been procedurally defaulted, as the dissent in the *Woodard* court of appeals suggested. In any event, this Court did not rely upon public intoxication

---

[58] *Mercado*, 972 S.W.2d at 78.

as an offense supporting arrest but relied solely on DWI.

If the Court in *Woodard* in fact avoided addressing the "presence or view" question, it erred. The defendant raised it at trial, the trial court suppressed on that basis, the court of appeals addressed the issue and found that "presence or view" doesn't mean what the words say, a dissent in the court of appeals relied on this statutory language, and a dissent in this Court relied on that language as well. The issue was staring the Court in the face. Given that the Court *should* have addressed the issue, the court of appeals in this case was not unreasonable in thinking that the Court *did* address the issue, especially when the Court cited earlier cases that had construed "the presence or view" requirement and cited them for the proposition that the information the officer receives need not be within his personal knowledge.[59] But if the Court did not in fact address the "presence or view" issue—even though it should have—then its decision is not authoritative on that issue.

If the Court in *Woodard* did in fact address the "presence or view" question, then it wrote those words out of the statute. Because courts can reasonably construe *Woodard* as impliedly doing so, we now disavow *Woodard* to the extent it

---

[59] *See Woodard*, 341 S.W.3d at 412 (quoting from *Beverly* and *Steelman*).

can be read that way. It is true that "the doctrine of *stare decisis* indicates a judicial preference for maintaining consistency with past decisions"[60] and that "the interests of *stare decisis* are at their height for judicial constructions of legislative enactments upon which the parties rely for guidance in conforming to those enactments."[61] But even in the area of statutory construction, "[p]recedent may be overruled if the reasons for doing so are weighty enough."[62] Factors that support overruling precedent include that the original decision was flawed from the outset and that the decision conflicts with other precedent.[63] Both of those factors are true here.

In determining whether a decision was "flawed from the outset," the issue is not whether we agree with it.[64] Rather, we look to whether the decision is "defensible."[65] A decision that is not defensible is flawed.[66] A statutory-

---

[60] *In re Green*, 713 S.W.3d 843, 853 (Tex. Crim. App. 2025).

[61] *Id.* at 854.

[62] *Id.*

[63] *Id.*

[64] *See id.*

[65] *See id.*

[66] *Id.*

construction decision is more likely to be defensible if it explicitly utilizes the correct statutory-construction framework, articulated by our seminal *Boykin* case.[67] And a decision utilizing that framework is likely to be defensible if the various analyses under that framework are "at least facially legitimate."[68]

*Woodard* failed to even recognize that the defendant had a serious argument that the court of appeals disregarded the plain language of Article 14.01(b). The opinion did not even purport to conduct a *Boykin* analysis. And to the extent *Woodard* impliedly construed Article 14.01(b) by writing the words "presence" and "view" out of the statute, that construction was, under the *Boykin* standard, very obviously wrong.

And, to the extent the opinion relied on *Beverly* and *Steelman* to support eliminating the "presence or view" requirement, it misconstrued those cases. *Beverly* did quote a generic "test" for probable cause (". . . reasonably trustworthy information . . . sufficient to warrant a prudent man in believing . . .") that included believing that an offense had been committed in the past,[69] but immediately

---

[67] *See id.* at 854-55 (citing *Boykin v. State*, 818 S.W.2d 782 (Tex. Crim. App. 1991) and discussing the use of the framework in *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581 (Tex. Crim. App. 1993)).

[68] *See id.* at 856.

[69] 792 S.W.2d at 104-05.

afterwards the Court explicitly stated that an arrest under Article 14.01(b) requires the officer to have "probable cause to believe that the arrested person *is* committing an offense."[70] The Court further said that probable cause under Article 14.01(b) "may be based upon the officer's personal knowledge coupled with personally observed behavior."[71] And *Beverly* concluded that Article 14.01(b) was satisfied when "police officers *personally observed* behavior that although not overtly criminal, was, when coupled with the officers' prior knowledge, sufficient to establish probable cause that an offense *was then occurring*."[72] Applying the law to the facts, *Beverly* concluded that, when the officer saw the defendant at the apartment complex, he reasonably believed, based on his prior knowledge of trespass warnings and his subsequent observations, that the defendant "was committing an offense"— trespassing at the apartment complex.[73] Thus *Beverly* held that prior knowledge can be used to support a conclusion that what the officer is seeing is a crime, but the officer still has to believe that he is actually perceiving a crime. Ditto for *Steelman*. *Steelman* quoted the general probable-cause test quoted

---

[70] *Id.* at 105 (emphasis added).

[71] *Id.*

[72] *Id.* (emphasis added).

[73] *Id.* at 105-06.

in *Beverly*,[74] but immediately after quoting the generic test, the Court stated more specifically that "[a]n offense is deemed to have occurred within the presence or view of an officer when any of his senses afford him an awareness of its occurrence."[75] Both *Beverly* and *Steelman* used the generic test for probable cause as background for the standard of confidence an officer must have but then modified that test to require that standard of confidence to relate to whether the officer was actually observing an offense. And because *Woodard* relied solely on *Beverly* and *Steelman* for the proposition that we can look to the past to determine "presence or view," a conclusion that it misconstrued those cases is fatal to any holding it might have made regarding the "presence or view" requirement.

Moreover, the "presence or view" language is *old*, preceding the turn of the twentieth century.[76] Early on, in *Russell v. State*, this Court interpreted that language in a predecessor statute to mean that the officer is actually observing the crime:

> Instead thereof, it would appear, because the court submitted the question of the legality of the arrest to the jury, that in the opinion of the court the fact that the testimony tended to show that the person

---

[74] 93 S.W.3d at 107.

[75] *Id.*

[76] *See State v. Coffey*, 41 Tex. 46, 49 (1874).

who did the shooting was near by, and that at least two of the parties were on the outside of the house at the time of the shooting, near enough to have seen the person, and that these parties were with the posse making the arrest, that the shooting occurred in their presence, and that this was what the statute meant when it authorized a person to arrest a party without warrant when the offense is committed in his presence and within his view, if it is one classed as a felony. In our opinion, the statute does not mean this; but in order to authorize an arrest without warrant in such case the *crime must be committed in the actual presence and within the actual view of the person making the arrest.*[77]

*Steelman*'s "any of his senses afford him an awareness of its occurrence" is the *Russell* standard in modern language. To the extent *Woodard* deviated from *Russell*, *Beverly*, and *Steelman*, it is the outlier.

### E. Conclusion

The court of appeals wrote the "presence or view" requirement out of Article 14.03(d), contrary to the plain meaning of the text. The court relied upon *Woodard* to do so, and to the extent *Woodard* can be read to address the issue, its analysis was very obviously flawed and wrong and conflicted with over a century's worth of precedent. Consequently, we disavow *Woodard* to the extent it suggests that the "presence or view" language does not mean what it literally says. And because the record supports the trial court's conclusion that the offenses of intoxication manslaughter, DWI, and public intoxication were not committed in

---

[77] *Russell v. State*, 37 Tex. Crim. 314, 317 (1897) (emphasis added).

Officer Ibarra's presence or view, the court of appeals erred to hold otherwise. We reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

Delivered: April 16, 2026

Publish